In respect to the lots situate above Thirty-seventh street, the assessment is clearly not one for repaving. It is conceded that the avenue in front of those lots had not before been paved, and the assessment imposed on those lots was, consequently, the first and only assessment ever laid upon them for the pavement of the avenue in front of them. The assessment which those lots had previously paid, was for paving a different part of the avenue. The exception in the acts of 1872 and 1874 applies only to assessments for repaving, and does not, therefore, save the right of the petitioner to apply, under the act of 1858, in respect of the pavement north of Thirty-seventh street.
As to the other lots, the assessment being for repaving, and the lots having once paid an assessment for the original pavement, it is open to the petitioner to show fraud, orsubstantial error in the proceedings, as provided by the act of 1858, as amended in 1874. The onus, however, of establishing the error is upon the applicant.
The error alleged is that neither the resolution nor the report of either of the committees, providing for the improvement in question was published in all the newspapers employed by the corporation, as required by the seventh section of the charter of 1857.
The omission to make the required publication in any one of the newspapers, whether daily or weekly, employed by the corporation for the publication of the proceedings of the common council, has been held by this court in the cases cited on the briefs fatal to the assessment. The respondent, however, seeks to distinguish the present case from those, on the ground that the act of 1858 has been amended by the substitution of the words "substantial error," in place of the *Page 460 
words "legal irregularity," in specifying the causes for which applications to vacate assessments may be made (Laws of 1874, chap. 312); and he claims that such an omission to publish as is here complained of, although it may be a legal irregularity, is not a substantial error.
It is to be observed that it does not appear that these proceedings were instituted after the amendment of 1874. That amendment was passed on the 2d of May, 1874, while the petition in this matter was verified on the twenty-third of April, and the petitioner's proofs on the twenty-fifth of April. But however that may be, we think that the failure to advertise in all the corporation papers, as required by the charter, is a substantial error. It was upon this ground that the former cases have been decided. The charter of 1857 requires the proposed resolutions to be published in "all" the newspapers employed, etc., and enacts that they shall not be passed or adopted until after such
publication. This we have decided to be mandatory, and a condition essential to the validity of the resolutions. Being so, we have no authority to dispense with the performance of any part of the condition or to determine whether or not the failure to observe it has produced actual injury in any particular case. Furthermore, failure to advertise is recognized by chapter 313, of the Laws of 1874, as a ground for vacating assessments for repaving.
The petitioner, for the purpose of substantiating this allegation of error contained in his petition, produced proof that the New York Leader was, on the 6th of July, 1867, pursuant to chapter 586 of the Laws of 1867, designated by the comptroller of the city of New York as a corporation paper, and that the resolution in question was not published in that paper, as required by the charter.
The resolution in question was introduced into the board of aldermen on the 3d of December, 1868, and adopted on the fifth of December, and was introduced into the board of councilmen on the 7th of December, 1868, and adopted on the tenth. At that time the act of 1867 was no longer in force. By an act passed June 3, 1868 (Laws of 1868, chap. *Page 461 
853), the power to designate corporation papers was transferred from the comptroller to the mayor and comptroller, who were directed to select the papers and communicate to the common council and to the clerk of each board thereof the names and titles of the papers which they had selected as official papers. This act further expressly provided that no proceedings of the common council or of either branch thereof, or notices of its committees should be officially published in any other paper or papers.
The only proof presented by the petitioner that the New York Leader was a corporation paper was the affidavit that it had been designated as such by the comptroller alone, under the act of 1867. I think, in view of the provisions of the act of 1868, that the petitioner failed to show that that paper was, in December, 1868, one of the papers employed by the corporation. Unless employed in accordance with the provisions of the act of 1868, the publication therein of the proceedings in question was by that act positively prohibited.
This point did not arise in the case of Helen E. Little (supra), as the resolution in that case was adopted in March, 1868, before the passage of the act of 1868 and while the act of 1867 was in force, and the designation of the paper under that act and its communication to the common council appeared in the case. In The petition of Astor (50 N.Y., 363), the selection of the Leader under the act of 1868 was not controverted. The resolution was adopted in September, 1869, and it was held that this selection continued through 1869, there having been no change either in the power to appoint or the appointment (see p. 368).
The Matter of Phillips, lately decided, arose under the act of 1867. In the present case it was not shown that the mayor and comptroller had refused or neglected to designate papers in conformity with the act of 1868, but, on the contrary, one paper appears to have been designated in October, and whether the designation of the four papers in December was completed or not, does not appear. The case does not, *Page 462 
therefore, fall within the decision in The Matter of Folsom
(56 N Y, 60).
There is nothing in any of the cases previously decided by us which conflicts with the positions now taken, as to the New York Leader having been shown by the petitioner to be one of the papers designated by the corporation. The proof of error presented by the petitioner being confined to evidence that the resolution was not published in that paper, it was essential to the petitioner's case to show that it was one of the papers employed by the corporation.
But it is said that this defect of proof on the part of the petitioner is cured by the proofs introduced on the part of the corporation. Among these proofs is a written designation under the act of 1868, signed by the mayor and comptroller, of one daily and three weekly papers, including the Leader. This designation is dated December 1, 1868, but it does not appear that it had been delivered or made public, or communicated to the common council before the adoption of the resolutions in question, or that it was ever acted upon prior to December 12, 1868, nor that other papers were not then employed by the corporation. The mere signature by the mayor and comptroller of a designation of a paper, without communicating it to the common council, as directed by the act of 1868, could not be deemed an employment of the paper by the corporation. Until the common council was informed of the selection of the paper it could not be required to publish its proceedings therein nor could it be aware of the necessity of such publication.
This designation under the act of 1868, was not relied upon or referred to by the petitioner when this proceeding was instituted. He relied upon the employment of the Leader under the act of 1867. If he desired to avail himself of the proof introduced by the corporation, he should have introduced evidence of the further facts required to complete the employment of the paper under the act of 1868.
All the other questions in the case are disposed of by our previous adjudications. So much of the order of the General Term *Page 463 
as reverses the order made at Special Term should be affirmed, but as the reversal is upon the ground of the omission of evidence, which may be supplied on a further hearing, and as the act of 1854, by which the corporation was enabled to appeal to the General Term, applies to appeals taken there under section 330 of the Code, which provides that a new trial may be ordered when necessary or proper, we think that course should have been pursued. It appears to have been the intention of the act of 1854 to assimilate appeals in special proceedings to appeals from judgments in actions.
The order of the General Term should be modified so as to award a rehearing of the petition at Special Term in place of ordering that the petition be denied. No costs in this court to either party.
All concur.
Ordered accordingly.