## In the Matter of the Petition of George H. Burmeister to Vacate an Assessment.

Under the provision of the New York charter of 1870 (§ 20, chap. 137, Laws of 1870), making it the duty of the clerks of the respective boards of the common council to publish all resolutions and ordinances, and prohibiting the passage, by either board, of a resolution or ordinance contemplating any specific improvement until the same has been published three days, and under the provision of the act of that year, making further provision for the government of said city (§ 1, chap. 383, Laws of 1870), which declares that the city advertising shall be done in newspapers designated by the mayor and comptroller, the clerk had no authority to publish, in any other than the designated papers, although no designation had been made ; and a publication, according to the statute, was a condition precedent to any right of the common council to act.

Accordingly, *held,* where it appeared that no legal designation of papers had been made, that a resolution for a local improvement, passed by the common council, was unauthorized.

*In re Folsom* (56 N. Y., 60), distinguished, and the authorities upon the subject of city advertising explained.

Also, *held,* that the irregularity was not cured and a contract for the work validated, by a certificate under the act of 1872 that no fraud has been perpetrated in relation to the contract (chap. 580, Laws of 1872), where the work was "repaving," and so within the exception in said act. (§ 7.)

A "street" includes sidewalks and gutters, and "paving" includes "flagging." The work, therefore, of setting curb and gutter stones, and flagging the sidewalk of a street, which has once been done, is included in the phrase, "repaving any street," in said exception ; it was intended to embrace the whole street and every kind of paving.

*In re Burmeister* (9 Hun, 613), reversed.

(Argued January 28, 1879 ; decided February 4, 1879.)

Appeal from order of the General Term of the Supreme Court, in the first judicial department, reversing an order of Special Term, which vacated an assessment upon two lots of the petitioner's for curbing, guttering and flagging Forty-sixth street, in the city of New York. (Reported below, 9 Hun, 613.)

The facts appear sufficiently in the opinion.

*P. A. Hargous*, for appellant.   The assessment was for a repavement, and is within the exception of section 7 of chapter 586, Laws of 1872, and chapter 313, Laws 1874.   (*In re Phillips*, 60 N. Y., 16; *In re Burke*, 62 id., 224; *In re Keteltas*, id., 624; *In re Astor*, 53 id., 617.)   The assessment was unauthorized by any ordinance and therefore void. *In re Second Ave. M. E. Ch.; In re Cram; In re Welch*, BARRETT, J., MSS.)   The ordinance and resolutions authorizing the improvement were not published as required by law.   (Laws 1870, chap. 137, § 20; id., chap. 583; Laws 1870, chap. 369, § 20; *In re Douglas*, 46 N. Y., 42; *In re Peugnet*, 67 id., 441; *In re Smith*, 52 id., 526; *In re Folsom*, 56 N. Y., 60; *In re Levy*, 4 Hun, 501.)   The certificate of the commissioners appointed under chapter 380, Laws of 1872, did not validate the assessment.   (*In re Peugnet*, 67 N. Y., 441; *In re Mayer*, 50 id., 504; *In re Phillips*, 60 id., 16; *In re Anderson*, id., 457; *In re Astor*, 53 id., 617.)

*J. A. Beall*, for respondent.   The assessment was laid for "setting curb and gutter stones and flagging," and not for "paving," and cannot be vacated for an omission to publish the resolution and ordinance of the common council.   (Laws 1872, chap. 580, § 7; Laws 1874, chap. 313; Revised Ordinances, 1838 and 1839; Rev. Ord. of 1866, p. 227.)   No papers having been designated under the acts of 1870 (chaps. 137, 383) as corporation papers, a publication of the proceedings in any paper that would publish them was sufficient. (*In re Peugnet*, 5 Hun, 434; 67 N. Y., 441; *In re Conway*, 62 id., 504.)   The burden of establishing the alleged error in publication was upon the petitioner.   (*In re Bassford*, 50 N. Y., 509.)

CHURCH, Ch. J.   The ordinance authorizing the work was adopted by the board of aldermen, October seventeenth, and by the board of assistant aldermen, November tenth, and approved by the mayor November 15, 1870.

The petitioner claims the benefit of the exception contained in the seventh section of chapter 580, of the Laws of 1872, upon the ground that the work was a repavement of the street which had once been done and paid for, and rests the motion to vacate principally upon the ground of a failure to publish the ordinances as required by law.

The right of the petitioner to the benefit of the exception, is denied, and also that any irregularity occurred in advertising. The question of irregularity will be first considered.

I have examined the statutes, and all the decisions bearing upon the question, and find some difficulty in reconciling the decisions both in the Supreme Court, and this court, but the apparent conflict in some of them arises from a difference in the facts and points presented, rather than from a difference of opinion as to the law.

The statutes in force at the time this work was authorized, were contained in chapters 137 and 383 of the Laws of 1870. By section 20 of the former act, it was made the duty of the clerks of the respective boards to publish all resolutions and ordinances of the common council, and prohibited any vote to be taken in either board upon the passage of a resolution or an ordinance which contemplated any specific improvement, or the levying any tax or assessment until after the same should have been published three days, and also required that such resolution or ordinance should after its passage by each board, be published with the ayes and nays thereon. As this section does not specify, the question occurs how and when the publication was to be made. This question is answered by section 1, of chapter 383, which declares that " all advertising for the city government hereafter, including the legislative and executive departments, and in street and assessment proceedings, shall be published in not more than seven daily, and six weekly newspapers printed and published in said city, to be designated from time to time by the mayor and comptroller of said city," and prohibited any payment for such advertising to any other paper than those designated. It appears now that at this

time, there had been no designation of papers under this act, and that no selection was in fact made until during the year 1871. It is suggested, and I infer that this was the view taken by the learned judge who delivered the opinion at the General Term, that in the event of no designation of papers, the clerk might publish the proceedings in any paper. I am unable to concur in this view. The two statutes should be read together. In effect they require the clerk to publish the proceedings in the papers to be designated, and all action of the common council is prohibited, until such publication. The clerk has no discretion to exercise, and no authority to publish in any other than the designated papers. Such a discretion has never been vested in the clerk or any other officer of the city, and such a power would destroy the protection which a publication was designed to secure. It would enable the clerk to insert the proceedings in any obscure sheet in the city. The object of requiring publication is to give notice to taxpayers of proceedings which may affect their interests. It is a substantial requirement and should not be frittered away. If papers are designated by some officer or body the citizen knows where to look for these proceedings, but if it is left to the discretion of some subordinate all the beneficial purposes of publication might be defeated, and it would be as well to say that if no designation were made, no publication need be made. This court held *In re Smith* (52 N. Y., 526), that if there were no corporation papers, no proceedings could be instituted, and that the publication according to the statute was a condition precedent to any right of the common council to act. The same decision was made *In re Levy* (63 N. Y., 637), in which this court adopted the opinion of Brady, J., reported in 4 Hun, 501. These decisions are authoritative that if there are no corporation papers, the common council cannot act. The statute is prohibitory. In *In re Folsom* (56 N. Y., 60), this court held from the facts appearing in that case, that certain designations made under the act of 1868, might continue as official papers, until designations should be

made under the act of 1870, and that by not changing such designations the officers which were the same in the act of 1870, as in the act of 1868, acquiesced in the designation of such papers, and a publication therein was good. In *In re Anderson* (60 N. Y., 457), the question was whether the New York Leader, was a corporation paper. It had been designated in 1867, but that selection was limited to that year, and it was held that as it did not appear that the designation under the act of 1868, had been communicated to the common council as required by that act, no legal employment or selection for 1868, of that paper had been made, and hence proof of a failure to publish in that paper did not invalidate the proceedings. These decisions are not in conflict, but were made upon the facts appearing in each case. The doctrine in the two cases before cited of *Smith, and Levy*, that in the absence of corporation papers the common council has no authority to pass an ordinance for a local improvement, or to lay an assessment has not been denied, or its soundness questioned. In *In re Folsom*, it was not disputed that papers had been duly selected in 1868, and it was held that they continued by adoption as corporation papers until a new selection was made under the act of 1870. In this case the evidence tended to show, and without explanation was sufficient to establish that no legal designation of papers was made under the act of 1868, because upon the authority of *Anderson's Case, supra*, such designation was not communicated to the common council nor was any evidence produced which would obviate the force of that requirement in that act, or from which an inference could be drawn, that it had been complied with. We cannot go back of 1868, because the selections in 1867 were limited to one year. (*In re Burke*, 62 N. Y., 224.)

As the case stands we must assume that at the time this ordinance was passed, there were no papers designated either according to the act of 1870, or 1868, in which these proceedings could have been published, and this being so the

common council were expressly prohibited from passing the ordinance in question. We feel bound to adhere to the previous decisions of this court upon this point, and we entertain no doubt of their correctness.

It is insisted however that the contract for this work was validated, and the alleged irregularities cured by the certificate of the commissioners under the act chapter 580 of the Laws of 1872, and that the exception in the seventh section of that act applies only to cases in which the commissioners failed to certify that the contracts were free from fraud. The only countenance for this position from any decision of this court is found in *In re Peugnet* (67 N. Y., 441), and in that case it was held that the exception did apply to cases where the work had been completed before the passage of the act of 1872, which is proved to have been the fact in this case. But I am of opinion that the certificate of the commissioners under that act has no effect upon the rights of parties, to vacate assessments under the exception contained in the seventh section. The purpose of the act so far as the certificate of the commissioners is concerned was to validate all *contracts* which they should certify were not tainted with fraud. If so certified the contracts were by the first section declared to be ratified and confirmed, and to be valid and binding, otherwise they could not be held regular, unless every technical requirement had been strictly complied with. The effect of the certificate as to parties is declared in the second section, that it shall be "binding upon the mayor, etc., of the city of New York, and upon all parties to the contract, agreement or award, who signed such requirement, or who were heard before said commissioners in regard thereto." These provisions affected the city, and the contractors, and no one else. It was not contemplated that any one but the parties to the contract should institute a hearing, nor be heard before the commissioners, and in this case it appears that the contractor and the comptroller only appeared, and were bound. These provisions relate to the validity of the contracts, and bind those, and

those only, who were parties to the contracts, and to the proceedings.

The property holders, who were to be assessed, had no opportunity to be heard, and could not upon established principles be affected by the adjudication of the commissioners. The seventh section treats of vacating assessments, and provides that they shall not be vacated for certain specified irregularities, but excepts cases of fraud, and cases of assessment for repavement of a street, which has once been done, and paid for. By the construction claimed, this exception would be of no value. If this is a repavement which has once been done, and paid for, the petitioner is within the terms of the statute, and his right is not impaired by the adjudication, that the contract under which the work was done, was free from fraud. I concur with the views of DAVIS, P. J., adopted by this court, in *In re Astor* (53 N. Y., 617).

The question remains, whether this work was a repavement of the street within the meaning of the exception contained in the seventh section of the act of 1872. The work was setting curb and gutter-stones, and flagging the sidewalk, which had once been done and paid for. This point has been expressly decided by this court against the city in *In re Phillips* (60 N. Y., 16). The incidental remark in the opinion that it did not distinctly appear where the work was done, does not impair the force or effect of the decision, that laying flagstones on the sidewalk, is paving the street. This decision has been since recognized, and acted upon in *In re Burke* (62 N. Y., 224).

In this case certain ordinances and other evidence were introduced, which it is claimed shed such light upon the question as ought to induce the court to re-examine it. We have re-examined it, and we do not feel justified in changing the conclusion at which we before arrived.

The ordinances speak of paving and re-paving sidewalks, and also carriage ways, and create a distinction by requiring that paving the former shall be done at the expense of the

property owners, while the latter shall be done at the expense of the city. The evidence tends to show that ordinarily flagging is understood to apply to sidewalks, for the reason, doubtless, that flagstones are generally used in paving sidewalks, and are not used in paving the carriage way. But these distinctions are not controlling. Pavement is a more comprehensive word than flagging; it includes flagging, as well as other modes of making a smooth surface for streets, including sidewalks. The question is in what sense the Legislature used the term in this statute. The expert called by the city stated that in a general sense paving included flagging. The language is "repaving any street," and not as in some of the ordinances paving the carriageways. A *street*, includes sidewalks and gutters, and when the Legislature used this general term, they intended to embrace the whole street, and every kind of paving, and no reason is perceived why they should not. The object of the statute was to give property owners the right to vacate assessments for this kind of work, which had once been done and paid for, for certain irregularities not allowed in other cases, and I am unable to perceive any reason why this privilege should not be available in a case of repaving a sidewalk as well as a carriage way. It was suggested on the argument that the reason for the distinction was that the repavement of the carriage way was for the benefit of the public, and that of a sidewalk for the property owner. If such a distinction exists it is only in degree. The public use both, but in different modes, while the property owner receives an incidental benefit from the paving of the carriage way, as well as the sidewalk. Besides, according to the ordinances introduced in evidence, the expense of repaving carriage ways is borne by the city at large, and not by the property owners, so that the exception would have no practical effect unless it applied to sidewalks, gutters, etc. We cannot suppose that the Legislature intended to confer a right upon the taxpayers, which could never be used for any beneficial purpose. We think the exception should be

liberally construed in the interests of those whom it was intended to benefit, and that the terms should be construed in their general and enlarged sense, rather than in the restricted and conventional sense, which may have prevailed among those who are engaged in performing the details of the work, especially should we do so, rather than put such a construction upon it, as will deprive it of any practical benefit or operation.

· It follows that the order of the General Term must be reversed, and that of the Special Term affirmed.

All concur.

Ordered accordingly.