Mr. Justice James
delivered the opinion of the Court:
The first question to be considered is, whether, in contemplation of law, the gas box in question was a part of the apparatus of the Gas Company, so as to make that company liable for injuries caused by its defective condition.
It is claimed on the part of the defendant that the authority given to the Gas Company by its charter to lay pipes in the-streets and avenues was limited to the laying of mains, and that, the distribution of gas from the mains to the consumers was designedly left to be accomplished in such manner as should be prescribed by the Corporation of Washington ; the latter being, as it is claimed, already possessed by its charter of ample authority to make the necessary excavations for that purpose, or to grant the privilege of so using the streets as it should see fit; that the corporation exercised that authority-in passing the ordinance referred to, and thereby authorized any lot owner to construct the lateral connections leading to-his lot, and that in pursuance of that ordinance the gas box complained of was actually put in at the cost of, and was-owned by the lot owner, and that consequently the latter, and not the defendant, would be liable for any injury caused by-its defective condition. The defendant’s contention as to the extent of its own powers was in the following words: “Authority is given, first, to manufacture, and, for. that purpose. to-erect the necessary buildings, works and apparatus; and, sec *47 ondly, to conduct the gas thus manufactured into the streets,. etc. Here the powers granted to the defendant stopped.”
We think that the provisions of the statute are very simple,, and that they do not admit of any such construction. For sake of convenience, we repeat a part of its words. They authorize the company to make and sell gas, “to be used for the purpose of lighting the city of Washington, or the streets thereof, and any buildings, manufactories or houses therein contained or situated, and to lay pipes for the purpose of conducting gas in any of the streets, avenues and alleys of the city.” Neither punctuation nor. the mere order of words is allowed to have a conclusive control in the interpretation of a statute. The substantive grant in this case was of authority to make an extraordinary use of public highways. The effect,, therefore, of these provisions may be stated as follows : first, the Gas Company may ■ manufacture gas from any suitable material, and may sell it for use in street lamps and in houses; secondly — and in order to make effectual this authority to sell gas — it may lay conducting pipes in any of the streets. Of course it was intended that such “laying” should be done in the usual manner; that is to sáy, beneath the surface, so that the company was authorized to éxcavate the streets for the-laying of whatever pipes it was authorized to lay. As to lateral pipes, it was clearly the intent of the statute that the gas-which was to be sold for use in the houses should reach them, and therefore that pipes necessary to that end should be laid by some person. The question is, whether this statute provided that they should be laid by the Gas Company. If this power was not granted to the Gas Company by this statute none of these works could be constructed at all, and the intent of the statute would fgil unless authority to construct them had already been granted to the Corporation of Washington. To meet this exigency, it is claimed, on the part of the defendant, that powers which included this authority had already been given to the municipal corporation, and that it was, for good reasons, the intention of Congress that the whole matter of the distribution of gas — in other words, the *48 lateral connections — should remain under the sole control of the city corporation. We have, therefore, to consider the powers of the latter.
Section 7 of the Act of May 15, 1820, provided, among other things, that the corporation should have authority “to erect lamps in the streets, * * * to open and keep in repair streets, avenues, lanes, alleys, drains and sewers, agreeably to the plan of the city; to supply the city with water,” etc.
Section 8 provided, among other things, as follows: “ The said corporation shall have full power and authority to lay taxes on particular wards, parts or sections of the city for their particular local improvements; and, upon application of the owners of more than one-half of the property upon any portion of a street, to cause the curbstones to be set, and the footways to be paved on such portion of a street, and to lay a tax on such property to the amount of the expense thereof; provided, that such tax shall not exceed three dollars per front foot; and, upon a like application, to cause the carriage way ■of any portion of a street to be paved, or lamps to be erected thereon, and light the same; and lay a tax not exceeding the whole expense thereof, in due proportion, on the lots fronting ■on such portion of a street.” .
The amending Act of May 17, 1848, provided, among other things, that the corporation should have power’“to take up ■and relay foot pavements and paved carriage ways, and to keep them in repair, and to lay and collect taxes, for paying the expenses thereof, on the property fronting on such foot-ways and carriageways; * * * to cause new alleys to be •opened into the squares, and to open, change or close those already laid out, upon the application of the owners of more than half of the property in such squares,” subject to certain conditions relating to damages. «
These were the only provisions relating to the powers of the municipal corporation, in the matter of streets, that were in force when the gas company was chartered; and clearly none of these authorized the corporation to place such struc *49 tures as lateral pipes and gas boxes in the streets. The powers of municipalities, especially those which involve expenditure of money and the imposition of taxes, are strictly construed. Power to make highways can not be held to include authority to make sub-structures which have no relation to the use of streets as highways; and power to provide sewers can not be held to include authority to lay gas pipes, and for that purpose to make excavations. These lateral conductors, then, and the necessary excavations, were not authorized at all, unless the act incorporating the gas company authorized that company to provide and lay them.
On the other hand, that act seems plainly enough, both by implication and by express terms, to grant the necessary authority to the Gas Company. By implication, because power to sell gas, to be used in houses along the streets, imports that the conducting pipes, which the seller is authorized to lay in the streets, are to include pipes which shall conduct it to the purchaser. And by express terms, because the special power to lay “ pipes” applies j ust as descriptively to lateral as to main pipes. Not a word in the statute suggests the distinction of main conducting pipes and “distributing” pipes. In the sense of this statute there is no such thing as a distributing pipe; they are all conducting pipes; and they are pipes for conducting gas in the streets, when laid anywhere between the building lines. The word “ street,” when used in respect of a power which is not peculiar to a carriageway— as when the use of streets is granted to a railway — applies to the whole street, including sidewalks and carriageway alike. It has been so held in reference to municipal powers. See In re Burmeister, 76 N. Y., 174; In re Phillips, 60 N. Y., 16; In re Smith, 52 N. Y., 526; Jackson vs. Mahan, 100 Ind., 342; Dickson vs. Worcester, 138 Mass., 555; Dooley vs. Sullivan, 112 Ind., 451; Warner vs. Knox, 50 Wis., 429; State vs. New Brunswick, 44 N. J. L. R., 46. Such, too, has' always been the interpretation of that clause of the organic act which provided that the Board of Public Works should have entire control of, and make all regulations which they should deem *50 necessary for keeping in repair “ the streets, avenues,” etc., of the city. No one ever doubted that the words “ streets and. avenues ” included the sidewalks. And indeed this application of the word is insisted on by the defendant’s own contention that the city corporation already had authority to lay these lateral connections; for that contention seems to rest upon its alleged control over the streets.
Another proposition touching this question of authority-remains to be considered. The provision -which authorizes, the Gas Company to lay pipes is coupled with a proviso, to-the effect that “ the said pipes” — that is to say, the pipes laid by the company — should be laid subject to such conditions and in compliance with such regulations as the corporation of Washington should prescribe. It is to be observed that this provision explicitly required that the pipes affected by the “ conditions” should actually be laid only by the company. In other words, the so-called “ conditions” could not be such as to determine whether the Gas Company should be allowed to lay certain pipes, or who should exercise the-power; but could only be such as related to the manner in which the pipes to be^laid by the Gas Company should be laid. Of course the municipal authorities could not, under the pretext of conditions, take away any part of a privilege-granted by Congress. Yet, the ordinance of 1868 did undertake to declare that what Congress had authorized the Gas-Company alone to do should not be done by it, but by somebody else. To that extent the ordinance was a nullity.
We hold, then, that notwithstanding the cost of making this lateral connection, including the gas box in question,, was paid by the lot owner, that structure was put there by the-defendant in the exercise of its own exclusive authority, and was in contemplation of law a part of its apparatus.
We understood at the argument that the responsibility of the defendant for its condition in that case was not disputed. We cite, therefore, only a single case; and we cite this only because it well states the high degree of this responsibility to the public. In Holly vs. Boston Gas Light Company, 8 Gray,. *51 124, the court said: “The defendants, under their charter, were in the employment of a great and peculiar privilege; that of supplying the means of light to all parts of the city. This devolved upon them a corresponding degree of responsibility in the conduct of their business, and in the preservation of every part, of their apparatus from defects by which the public at large might be subjected to great inconvenience, and particular individuals might be exposed to imminent peril and danger in respect of their property and lives. They were,, therefore, under the highest degree of obligation to be at all times in a state of the most ample preparation to meet, with all reasonable promptitude and dispatch, whatever exigency-might occur requiring their attention.”
The jury were properly instructed, then, that “it was in law the duty of the defendant to exercise a reasonable supervision of the gas box placed by it in the streets of Washington.”'
It is objected, however, that there was no evidence which justified a submission of the question of-negligence on the-part of the defendant; in other words, that there was no evidence to show that the gas company had knowledge, before-the accident, that the gas box was. out of repair. The particular point of the exception is, that the evidence on that: subject was incompetent. It consisted of a repetition, by the stenographer who took down the proceedings at the trial of’ Parker vs. The District, of the testimony given at that trial by a witness who had since deceased; and was to the effect that the gas box in question had remained uncovered and in a dangerous condition for several weeks before the accident to Mrs. Parker.
In the cases cited in support of this exception, such evidence was properly excluded on the grouhd that the party against whom it was offered was a stranger to the action in which the evidence was originally given. We think that such evidence is admissible in what is called‘“an action over,” on the ground that, having received notice of the trial of the original action, and having had the opportunity to take part in that defense, and to cross-examine the witnesses, he is not *52 a stranger to such former action. When the law has afforded to such a party the same opportunities and guaranties for securing the truth which it affords to a party to the record, it regards him as having in that respect the status of a party. Mr. Greenleaf, whose explanation of the principle was commended by the Supreme Court in Lovejoy vs. Murray, 3 Wall., 18, describes him as “a party in the larger sense.” 1 Greenl. Ev., secs. 523, 525. See also Robbins vs. Chicago, 4 Wall., 657 (672). Of course it is not necessary that there should have been an actual cross-examination, if the opportunity was afforded. Carzenove vs. Vaughan, 1 M. & Selw., 4; McCombie vs. Anton, 1 M. & G., 27. If it was the duty of the defendant to see to it that its gas boxes in the highways should not injure any person by reason of being out of repair, it had ■all the interest that a technical party could have in the question whether a defect had existed, and had existed long enough to charge it with notice. The subject-matter of the former evidence was common to the District and itself, and their opportunities for truth and guaranties against mistake or falsehood were the same. We think that every condition was satisfied which should make the evidence of the deceased witness at the former trial competent evidence against the defendant in the “action over.”
It is next objected that the recovery against the District was for an injury caused partly by the open gas-box and partly by the depression of an adjoining brick; that the latter was a defect in the sidewalk for which the plaintiff alone was responsible ; that consequently the plaintiff was^a joint ^wrongdoer, and therefore could not recover at all in this action over. The principle as to joint wrongdoers is correctly stated; but, if it be conceded that the recovery was for an injury caused by the combined operation of the two defects, we do not perceive that there is any ground for holding that the plaintiff was, in respect to this depressed brick, a wrongdoer at all. As was remarked by the court in its charge, there was no evidence in this case tending to show that that depression .occurred in the original construction of the side *53 walks, or when it occurred. In other words, there is no evidence to show that the plaintiff had notice, before'the accident, that such a defect existed, so as to be guilty of negligence in failing to repair it. Whatever the defects on which the judgment may have been based; the' rule as to joint wrongdoers can have no application in the absence of proof that the plaintiff was a wrongdoer as to one of them ; that is to*say. in the absence of proof that the plaintiff was liable for the depressed brick.
It is further objected, however, that no recovery ever can be had in this action, even if the plaintiff was not a wrongdoer in respect of the sunken brick; the contention being' that the judgment against this plaintiff, nevertheless, included damage done by that defect, and that this defendant, at all events, is not responsible for the latter. The further contention, of course, is that, as the judgment is not apportion-able, nothing can be recovered if a part cannot. We think that this objection is not tenable.
The defendant’s own hypothesis in making it is that Mrs. Parker's foot was caused to sink into the depression adjoining the open gas box. In that case the open gas box was, in , contemplation of law, the causa próxima of the whole injury. When one person, either maliciously or carelessly, throws another into an excavation — and that is just what this defendant is alleged to have done — it is no excuse that he did not make the excavation, and is not responsible for it.
His own act is, nevertheless, causa próxima of the. whole damage. If the original action had been directly against the defendant instead of the District, the recovery would properly have included the damage partly done by the depressed brick, if the evidence showed that the open gas box threw her foot into that depression. It is no more a defense in this action over than it would have been in a direct action, that the gas company was not responsible for the existence of the cavity into which its negligence threw her.
It will be observed that we differ from the instruction given in the charge on this point; but whatever errors there may *54 have been in the views of the court was in favor of the defendant, and, therefore, is not a ground of exception on its part.
Finally, it was objected that this gas box, having been originally placed, in obedience to the ordinance of 1868, near the curbstone, where it was not likely to cause injury to pedestrians, had been caused by the Board of Public Works to occupy the center of the sidewalk, where it was' more dangerous. We do not perceive the importance of this suggestion. The Board of Public Works had the same authority to determine the position of the gas boxes which the corporation of Washington had possessed, and if it did cause this gas box to be more likely to do mischief unless it were well looked after, it did not relieve the defendant of its duty to so look after it. It is the defendant’s duty to keep these gas boxes covered, whatever place they may occupy in the highway, and to be all the more careful to do so when they are in a dangerous place. As the Supreme Court of Massachusetts said in the case above quoted, the privilege which it has received charges it with an assiduous duty.

Judgment affirmed.