LUTHER C. CHALLISS v. V. W. PARKER, *Treasurer*, &c.

1. CITIES; *Street Improvements*; *Order of Making.* A city of the second class has power to· sidewalk a street before it has been macadamized or graded. [*Parker v. Challiss,* 9 Kas., 155, affirmed.]

2. SIDEWALKS. Such city may, in the exercise of this power, and where the irregularities of surface require, cause a sidewalk to be raised on posts, instead of placed directly on the ground.

3. ——— *Liability of Lot-Owners for Assessments.* And where such walk is only in front of regularly laid out lots, the mere fact that it crosses running water will not make the act of the city in building it *ultra vires,* nor destroy the liability of the lot-owners to pay the assessments therefor.

4. COUNTY TREASURER; *Power to Sell Lot for City Assessments.* Under the laws of 1868 the county treasurer had power to sell lots in cities of the second class for the non-payment of assessments for building sidewalks.

*Error from Atchison District Court.*

INJUNCTION, brought to restrain *Parker,* as county treasurer from selling certain lots in the city of Atchison for de-

linquent city assessments. The petition alleged that *Challiss* was the owner of seven lots in block 18, Challiss' Addition, lying on the north side of Santa Fe street, in the city of Atchison, between Eighth and Ninth streets; that each of said lots was 43 feet wide, each was of the value of $100, "and that said Santa Fe street opposite said lots is now and ever has been uneven and rough, and has never been graded or opened to public use, and is there crossed by a branch of White Clay creek, a running stream of water at all times;" that the city council of the city of Atchison had by contract caused to be erected along said Santa Fe street "what was called a sidewalk opposite plaintiff's said lots, but which in fact was a bridge made of lumber, four feet wide, and elevated on posts, with hand-railing in some places fifteen feet above the creek-bed across the said branch of White Clay creek, in the street in front of said lots;" and had afterward by ordinance levied a tax or assessment on each of said lots, as follows — on lots 2 and 3, $42.14 each; on lots 4 and 6, $32.25 each; on lots 5 and 7, $21.50 each, and on lot 8, $21.07 — total, $212.85; that said taxes were certified by the city clerk to the county clerk, and placed on the tax-roll for 1870, opposite said lots respectively, in a separate column, as "sidewalk tax;" that the tax-roll was in the hands of *Parker*, as county treasurer, who had advertised said lots for sale for said assessments, and was about to sell, etc. (The petition also set forth several other matters, and raised several questions thereon, which were passed upon and settled in the case of *Parker*, *Treasurer*, *v. Challis*, 9 Kas., 155.) The plaintiff claimed that the mayor and council had no authority to make or contract for the said bridge or sidewalk in front of plaintiff's said lots over or upon the said street at the time and in the condition said street then was, and to assess plaintiff's said property therefor; that "the ordinance levying the said assessment did not distinctly state the object of the same as required in such cases; that said pretended assessment was not so made and placed on the said tax-roll as special assessment for improvements," being the only purpose and manner author-

ized by law in such cases; and that said taxes or assessments were so placed upon said tax-roll without authority of law. A temporary injunction was granted. The action was tried at the November Term 1872. The district court found the facts in favor of the defendant, and as conclusions of law found —

"1st.–That the city of Atchison, as a city of the second class, has the power to require the building of sidewalks; that the exercise of such power is vested in the mayor and council, and such officers have and may exercise a discretion as to its use.

"2d.–The contract made by the city with R. Clark & Co. to build the whole of said sidewalks, on streets graded, and on those not graded, and to support the same upon trestle-work in low places, was within the scope of said authority.

"3d.–The said sidewalk-tax was legally placed on the tax-roll, and the sale of said lots therefor by defendant, as county treasurer, is fully authorized by law."

The temporary injunction was dissolved, and the court gave judgment in favor of the defendant and against the plaintiff for costs. *Challiss* brings the case here on error.

*W. W. Guthrie*, for plaintiff in error:

1. The case between these parties submitted to this court in January 1872, 9 Kas., 155, is no precedent here, in principle or decision. There is the "R. Clark & Co. contract," and "sidewalk taxes," and "street assessment;" but here the parallel ends.

In this case but one street was included in the contract, and on this was built what is gravely called a "sidewalk," being a structure of wood across a running stream 100 feet wide, on trestle-work 14 feet high, fenced in by "hand-rails" for the safety of travelers, and affording to man and beast the *only* communication from bank to bank, and this at an extraordinary cost. Only on the presumption that "bridges" are unknown in the second judicial district, can the conclusion of law that the "sidewalk tax" for building this bridge "was legally placed on the tax-roll," be sustained. But the city

attorney argues that "what our city council has said is a sidewalk, let no court dare to say is a bridge, though it should be thrice 100 feet long and thrice 14 feet high." The city attorney insists that his position is fortified by sound reason, and demonstrates the correctness of his proposition by analyzing the word *sidewalk* thus — *side* means remote from the middle, and *walk* is an improved roadway. Concede so much, and what would have been the status of the walk 7 feet high and 20 feet into the street if that public bridge had never been built, or had neither ladders nor balloons been invented! (See *City v. Wheelock*, 11 Cush., 393.) The building of these walks was the first and only opening of previously impassable streets. The sole *opening* of streets, the sole *bridging* of living streams of great width, and the building of *sidewalks*, are united in one contract, and the aggregate cost is apportioned to the several lots abutting on these improvements, and called a "sidewalk tax." It is said that the cost opposite each lot is separately *estimated* by the engineer. This action in nowise affects the work, except as a preliminary to advertising and letting. But if this law did attempt to authorize a front-foot tax to pay for what is in fact "the opening of a street" to public use, it would be a wanton perversion of authority, and unconstitutional and void — a *local* tax for a *public* purpose. *Hammett v. City*, 65 Penn. St., 146, is fully in point; and see Cooley Const. Lim., 508; 1 Neb., 389. And it is not a uniform and equal rate of assessment and taxation, within § 1 of art. 11 of constitution. 3 Ohio, 88; 3 Ohio St., 15; 11 Ohio St., 639; 12 Wis., 618.

And this authority as claimed is an "unrestricted power of assessment" in violation of § 5 of art. 12 of the constitution: 10 Wis., 242; 2 Black, (U. S.,) 514; 5 Dana, (Ky.,) 31. Can a $1000 walk be required opposite a $100 lot? Is "opening a street" less than the act of introducing such street to some public use? The most of these streets have never been usable, only as opened by these walks. Then under clause 2, § 30 of the city charter, (Gen. Stat., 160,) the cost must be

paid by a general tax, not by a local assessment, and because it was incurred for a general, not a local purpose.

A structure across either a running stream or a ravine, and which affords the only communication between the opposite banks, is a bridge in every sense of the word, and to be paid for by *general tax.* A bridge *affords* communication, while a sidewalk *improves* existing communication. In one case the *accommodation of the public* is the leading inducement, in the other it is the *improvement of the property.* Such is the reason for the difference in assessing the tax in our law. Can the law be evaded by calling a bridge, or a plankroad, a sidewalk? *Mays v. City,* 1 Ohio St., 272. But it is said that we have stood by and seen our *lots improved.* Not so; we have only seen streets opened and bridges built.

2. It must be conceded that defendant has no authority to sell for a tax never on his tax-roll. Has he any more in case of a tax which *no law authorizes to be placed on his tax-roll?* He could not sell real estate for a personal tax, because not authorized; yet he may receive the tax. *Kirkwood v. Magill,* 6 Kas., 540; *McInerny v. Reed,* 23 Iowa, 413; *Lacey v. Davis,* 4 Michigan, 157; *Fremont v. Boling,* 11 Cal., 380. All assessment for taxation is *ad valorem:* §§ 31 to 36; and no front-foot description has ever existed on the assessment or tax-roll of defendant's county. Sec. 69, ch. 107, Gen. Stat., 1043, contains the only authority for any city tax to go upon the tax-roll of the county, and it extends only to the "*percentage* levied on the real and personal property in such city as *returned on the assessment-roll of the county.*" By what authority or law does any other than a percentage tax predicated on the assessment-roll get upon the tax-roll? Sections 80 and 81 of said ch. 107 cannot contemplate a sale for any other than taxes authorized upon the tax-roll. Could defendant sell for a delinquent poll-tax? In case of a front-foot assessment, the contractor could by suit enforce his lien, if any existed, by sale, or otherwise, by common law action: 20 Iowa, 396; 23 Iowa, 413; 12 Cush., 276; Dillon Munic. Corp., § 656, p. 614.

3. But it is said that the *regularity* of a tax proceeding will not be inquired into by injunction. Does this mean that wherever a pretended tax appears on the tax-roll, the property-owner must pay it or suffer a cloud to settle on his title? Is attacking a void proceeding questioning the regularity of its subject-matter? We say that this pretended "sidewalk tax" is on the tax-roll not through any mistaken exercise of authority, but in the entire absence of all authority. If so, is it an *irregularity*, or a *nullity?* 16 Ohio, 574; 19 Mich., 44; 12 Mich., 418; 18 Wis., 92; 21 Ill., 610.

*D. Martin*, for defendant in error:

1. The plaintiff does not allege that he paid or tendered any part of the taxes or assessments on the lots described in his petition; and the findings affirmatively show that all of the taxes and assessments for 1870 were delinquent at the commencement of this action — the state and county and other taxes, as well as the sidewalk taxes. This alone was a sufficient reason for the refusal of an injunction.

2. But the facts are materially different in this case from those in the former case. The contract here was for one single sidewalk on the north side of Santa Fe street, extending from Eighth street to Ninth street. An ordinance had passed the council requiring the construction of a sidewalk on the north side of Santa Fe street from Fifth street to Eleventh street; but plaintiff and other lot-owners failed to build the walk between Eighth and Ninth streets. It required only the completion of the walk along block 18 to make a continuous walk on the north side of Santa Fe street from Fifth street to Eleventh street. All the prerequisites to the levying of the assessment were strictly complied with, and the ordinance levying the assessment "stated correctly the amount due on each lot at the contract-price per foot according to the frontage of each lot on said Santa Fe street."

The only objection not disposed of by the findings is that Santa Fe street between Eighth street and Ninth street is impassable for teams on account of a branch of White Clay

creek crossing the same between those points, and making it necessary to support the sidewalk on trestle-work. This was the main objection urged in the case of *Parker v. Challiss*, decided at January Term 1872 of this court, (9 Kas., 155.) In that case the court below found as a fact that "when said sidewalks were built some of the streets upon which they were built had never been graded or opened to public travel, and portions of said walks by reason of the uneven condition of the streets were necessarily built on posts in some cases five feet high, and in some cases the walks were built over running streams of water, not otherwise bridged, at an elevation of five feet in some places or more. In many places the walks were built on even ground or nearly so." And these facts were urged with emphasis upon the attention of the court by defendant's counsel in that case to show that the injunction should be sustained. But this court decided that these facts did not invalidate the assessment — that the unqualified power to levy assessments to pay for making sidewalks could not be subject to the limitation, nowhere expressed or implied, that such assessments can only be levied where the sidewalks are built on graded streets, opened to public use, and passable at all points. The reasoning of the court in that case is conclusive in this case.

The opinion of the court was delivered by

BREWER, J.: There are but two questions in this case. The plaintiff is the owner of certain lots on Santa Fe street in the city of Atchison. The authorities after proper proceedings let a contract to sidewalk that street. The sidewalk was built. The assessments therefor upon plaintiff's lots were not paid, and the authorities proceeded to sell. To restrain such sale this action was brought. And first, the plaintiff insists that the supposed sidewalk is no sidewalk, but a bridge. The proposals were for a sidewalk; the contract was for a sidewalk; the work was accepted as a sidewalk, and the attempted sale is for nonpayment of a sidewalk-tax. The structure is spoken of all through the findings as

a sidewalk. It is described in the petition as a board walk, four feet wide, resting on stringers set on blocks and posts. The only reason for not considering it a sidewalk is, that in two places for short distances it does not rest on the ground, but is elevated on trestle-work, and has a hand-rail on either side. On one of these places it crosses a branch of White Clay creek, a running stream. A sidewalk is defined by Webster as a "raised way for foot-passengers at the side of a street or road; a foot pavement." The structure described in the petition and findings answers this definition exactly. It is a raised way for foot-passengers. The mere fact that for a short distance it is elevated on posts, instead of resting on the ground, is wholly immaterial. Nearly all of Chicago has been and much of it is still sidewalked in that way. Yet it would amuse the citizens of that city to be told that these walks thus elevated on posts were not sidewalks. You can hardly travel over any city in the land, without finding here and there for short distances the sidewalks raised on posts, instead of resting directly on the ground. Nor is it any the less a sidewalk because under it in one place is a stream of running water. It appears from the findings to have been built on the side of a regularly laid-out street, and all the way in front of regularly laid-out lots. If the flow of water is not sufficient to hinder the platting and sale of city lots, it will hardly be sufficient to change a sidewalk into a bridge. It not unfrequently happens that the owners of ground, proposing to lay it off into streets and blocks, wholly ignore small streams of water, expecting that the sewerage of the future will change the channels; and for all the record shows this seems to be just such a case. Can it be that under these circumstances no sidewalk can be built? Of course, it is possible to conceive of large streams of water over which the city authorities might attempt to build foot-bridges under the name of sidewalks. In such case we should hardly expect to find the bed of the stream laid off into lots, and the owners vigorously striving to prevent tax-titles from accumulating on them. At any rate, the record presents no such case. We

have treated these objections as they have been presented in the brief of counsel. Yet after all, it seems to us that the gist of the objection really lies in this, that the street was sidewalked before it was graded, and that in this indirect way the learned counsel has ingeniously sought a re-examination of the question decided in a similar case between the same parties about a year ago. (9 Kas., 155.) We have re-examined that question, and see no reason to change the conclusion we then reached. The streets are placed under the care of the municipal authorities. (*A. & N. Rld. Co. v. Garside*, 10 Kas., 552.) To them is given the power to grade, to sidewalk, to sewer, to curb and gutter, to macadamize, and otherwise improve these public highways. The order in which such improvements shall be made is nowhere prescribed. There is in the nature of things no fixed order in which such work must be done. There is no reason why streets should be made passable for teams before they are for footmen. They are designed for the use and convenience of foot travelers, equally with those who drive in carriages. The power to do these several works carries with it, in the absence of any restrictions, the discretion to determine the order and the manner of doing them. Whether that discretion was wisely exercised in this case, we are unable from the facts in the record to determine; and even if we were able, it would not affect the question of power.

The second question is thus stated by counsel: "It must be conceded that defendant has no authority to sell for a tax never on his tax-roll. Has he any more in case of a tax which no law authorizes to be placed on his tax-roll? He could not sell real estate for a personal tax, because not authorized, yet he may receive the tax. All assessment for taxation is *ad valorem;* and no front-foot description has ever existed on the assessment or tax-roll of defendant's county. Sec. 69, ch. 107, Gen. Stat., 1043, contains the only authority for any city tax to go upon the tax-roll of the county, and it extends only to the percentage levied on the real and personal property in such city as returned on the assessment-roll of the

Opinion of the Court.

county. By what authority or law does any other than a percentage tax predicated on the assessment-roll get upon the tax-roll?" The 2d subdiv. of § 30 of the charter, Gen. Stat., 160, after providing for the asssessment for sidewalk and other street improvements, some of which were to be by the front foot, and some *ad valorem,* closes with this sentence: "The assessments made under this act shall be known as special assessments for improvements, shall be levied and collected as one tax in addition to the taxes for general revenue purposes, and shall be certified. to the county clerk of the proper county to be placed on the tax-roll for collection, subject to the same penalties and collected in like manner as other taxes under existing law." We think this clause gives ample authority for placing this tax upon the tax-roll of the county treasurer.* True, in this case the tax is placed in a column on the treasurer's books headed "sidewalk tax," instead of "special improvement tax," or "special assessments for improvements;" but this, if a defect, is not one that calls for the interposition of the strong arm of equity. True, also, this section has been amended, and this particular sentence omitted: Laws 1871, pp. 148, 149, §§ 16, 17; p. 166, § 81; Laws of 1872, pp. 200, 201, §§ 32, 33. But these taxes were on the tax-roll before the passage of these acts, and under the decision in *Gilleland v. Schuyler,* 9 Kas., 569, the right accrued, and the proceedings commenced were not interfered with. More than that, it may well be contended that § 26 on page 152, laws of 1871, and § 43, page 205, laws of 1872, should be construed as a continuation of the authority given in the omitted sentence, for they provide that "*all* taxes and assessments shall be certified," etc. The judgment of the district court will be affirmed.

All the Justices concurring.

[*QUERY: Did not ch. 122, laws of 1870, (p. 248,) "an act in relation to sidewalks and sidewalk taxes in cities of the second class," furnish specific authority to the county clerk to place the "sidewalk taxes" in question on the tax-roll?—REPORTER.]