Thomson, P. J.
Petition for a writ of mandamus commanding the board of public works of the city of Denver to allow to William Hayden an estimate for work done by him in the month of November, 1897, under a grading contract between him and the city. Demurrer to the petition for want of facts sufficient to authorize the issuance of the writ. Demurrer overruled, leave to respondents to answer petition denied, and peremptory writ ordered. Case here by writ of error.
The application was upon notice, as provided by the code, and there was no alternative writ. The petition set forth the several proceedings had by the board of public works and the city council for the grading and curbing of certain streets of the city of Denver and the letting of the contract to the petitioner. The contract, as set forth, provided for payments to the contractor “by local improvement bonds or warrants, drawn on the Capitol Hill grading and curbing district number one fund, in monthly installments of eighty per cent of all moneys due for work done the preceding month under and in accordance with the provisions and stipulations of the contract, based on monthly estimates of work done, cp.rtifip.rl to by the engineer, and approved by the board and the mayor.” The contract also provided that upon the full completion of the work, the board should cause a final estimate to be made of the amount and value of the work, upon which, after deducting the sums previously paid, the contractor should receive the balance due him. The petition further averred the entering by the petitioner upon the performance of his contract, and the prompt, full and complete discharge by him, at all times, of his part in the execution of the contract; and alleged that during the month of No- ■ vember, 1897, he did and performed work under, and in accordance with, the provisions and stipulations of the contract, *38 and in full compliance therewith, as appeared hy the estimate of the work certified to by the engineer of the board; that on the 14th day of December, 1897, he made a demand upon the board for an estimate of the November work, but the board denied the request for the reason that he had repeatedly refused to grade the space between the property line and the curb line at all places in the district; that he had caused the proceedings of the board and the contract to be examined, and had been advised that neither the proceedings had by the board and the city nor the contract included, or were intended to include, the grading of any of the sidewalk areas in the district, and that any attempt by the board and the city to enforce an assessment against the adjoining property in the district, to create a fund out of which the warrants issued to him must be paid, would be in violation of the provisions of the city charter in respect to compelling the construction or reconstruction of sidewalks upon the official grade, by assessment, at the expense of the adjoining property.
The demand upon the board for an estimate was made in pursuance of section 43 of article 7 of: the city charter, which provides that the bonds or warrants in which local improvements shall be paid-for shall be issued upon estimates and orders of the board of public works, approved by the mayor.
The question of the nature of the duty devolved by law upon the board in the matter of granting the estimate mentioned in the petition is not noticed by counsel in their argument. If it was purely ministerial, if the board was clothed with no discretion concerning it, mandamus will lie to compel its performance; but if the board had authority to inquire into the alleged facts upon which the demand was based and determine whether the petitioner had so complied with his contract as to entitle him to the estimate, then the duty involved the exercise of official judgment, and the manner'of such exercise cannot be controlled by mandamus. But as the question has not been raised, we shall not examine it; and acquiescing in a theory of the case upon which both sides *39 seem to agree, we do not think that the court erred in overruling the demurrer. The petition set forth the statutory proceedings, by both the board and the city, necessary to give validity to the contract, and alleged the performance by the petitioner, in all respects, of its requirements, and the refusal by the board to discharge a duty which such performance devolved upon it. We are unable to say that, upon the face of the petition, leaving out of consideration the question we have suggested, he was not entitled to the writ.
But to dispose of the question whether, on the overruling of their demurrer, the respondents were entitled to leave to answer, will require more extended discussion. The learned counsel for the petitioner denies the right in an argument based entirely on the phraseology of the chapter of the civil code relating to mandamus. Under a technical and arbitrary system of practice which it was the purpose of the reformed procedure to simplify and relax, the respondent was always allowed to test the sufficiency of the alternative writ before being required to make return. The objection was usually taken by motion to quash the writ; and upon a ruling against the motion, leave was given to answer. High on Extraordinary Remedies, § 521, et seq.; King v. Mayor of York, 5 T. R. 66, 75; Harwood v. Marshall, 10 Md. 451; State v. Lean, 9 Wis. *279. And to enable us to say that by interposing objections to the writ or petition, which go to the sufficiency of its allegations, the respondent loses the right to make answer if his objections are overruled, it must clearly appear that to permit an answer would be inconsistent with the provisions of the chapter.
The chapter concerning mandamus commences with section 307, and ends with section 320, of the civil code. The following is the first clause of section 307: “ The writ of mandamus may be issued in the manner provided in this chapter, and not otherwise.” It is then provided that the writ shall be issued upon petition and affidavit, on the application of the party beneficially interested, and shall be either alternative or peremptory; that when the application is made *40 without notice to the adverse party, the alternative writ shall be first issued; but if the application be upon due notice, and the writ be allowed, the peremptory writ may be issued in the first instance; that on the return of the alternative writ, or the day on which the application for the writ is noticed, or on such other day as the court or judge may allow, the party on whom the writ or notice has been served may show cause by answer under oath, made in the same manner as an answer to a complaint in a civil action; that certain questions of fact raised by the answer may be submitted to a jury; that if no answer be made, the case shall be heard on the papers of the applicant; that if the answer contained only such matters as may be explained or avoided by a reply, the court may grant time for replying ; and that if the complaint or answer or answer and reply raise only questions of law, or put in issue immaterial statements not affecting the substantial rights of the parties, the court or judge shall fix a day for the hearing of arguments.
Now it is said that the provision that the writ of mandamus may be issued in the manner provided in this chapter, and not otherwise, confines the parties to the exact procedure which the charter prescribes; that because objections in limine to the writ or petition are not specifically authorized, none can be taken; and that the only way in which the respondent can meet the writ or petition is by answer. It is also contended that the demurrer was an answer within the meaning of the chapter; that as it raised only questions of law, the case was one for determination by the court upon the arguments ; and that as the pleading is technical and the practice rigid, and there is no discretion in the court to allow an amendment, a decision upon the demurrer concludes the case. Upon counsel’s theory, the law of mandamus, as found in the code, is rigorous and arbitrary in the extreme, and may be made the instrument of oppression and injustice. We do not think that such a theory is necessarily dedueible from the language of the chapter, or that the construction contended for is in harmony with the spirit of the code. With reference *41 to the code, section 443 provides that its provisions, and all proceedings under it, shall be liberally construed with a view to promote its objects and assist the parties in obtaining justice. Guided by this rule we are able to arrive at conclusions directly opposed to those reached by counsel. We concede that the provision that the writ of mandamus may be issued in the manner pr'ovided in the chapter, and not otherwise, means what it says; but what is the manner provided in the chapter? First, the applicant must institute the proceeding by petition and affidavit; if the application be without notice to the adverse party an alternative writ must first issue; but if it be upon due notice, the writ when issued must be peremptory; second, if answer be made either to the alternative writ or to the petition, it must be under oath, and made in the same manner as an answer to a complaint in a civil action; and if no answer be made the case must be heard on the papers of the applicant. Third, if the answer tenders .material issues of fact the questions may be tried by a jury; but if it tenders immaterial issues, or raises only questions of law, the case must be heard by the court. Concerning the manner of the issuance of the writ the foregoing is sufficient for our present purposes. The only proceeding of the respondent which is referred to is his answer; but we think, saying nothing further about the alternative writ, because there was no alternative writ in the case, that the language of the law contemplates a petition which calls for an answer. Surely a petition which may result in a peremptory writ, must be a good petition; and the manner prescribed for the issuance of a peremptory writ necessarily supposes preliminary papers, which on their face would authorize the writ. If compliance by the applicant with the requirements of the chapter involves the presentation of a sufficient petition, and he fails in this respect, then the provisions regulating the subsequent proceedings have no application. It follows therefore that the respondent is entitled to the judgment of the court upon the sufficiency of the petition; and that when it is finally determined that a sufficient petition has been presented, and not *42 before, it is incumbent upon him to make answer. If an answer is made it must be under oath. It must therefore deal with facts. It is only in relation to facts that verification is ever required. Further, the answer is made in the same manner as an answer to a complaint in a civil action. An answer to a complaint in a civil action consists either of denials of allegations of fact in the complaint or of new matters of fact constituting a defense or counterclaim, or of both. That the answer in mandamus must be restricted to matters of fact could not very well have been made more certain. Such being the character of the answer, the questions of law which it may present must arise upon the facts which it sets forth. They can arise in no other way. The demurrer here was not an answer, because, first, it was not under oath; and second, it did not plead facts. It was a method, chosen by the respondents, of objecting to the petition, and as the law does not provide a specific mode of interposing such objection, there is no reason why it may not be taken in the form of a demurrer. The respondents had the right to a sufficient petition before answering ; and upon the overruling of their demurrer they were entitled to leave and time to answer. If their request had been for leave to answer, without more, we should stop here, and reverse the judgment for the error of the refusal; but they brought their answer' into court and only asked leave to file that particular answer. Their request was confined to the answer which they produced; and if it was insufficient, and on its face showed no cause against the issuance of a peremptory writ, the* court did not err in denying leave to file it. But, on the other hand, if it was sufficient, it should have been received. We shall therefore now proceed to an examination of the answer tendered.
The answer first puts in issue the allegations of the petition that the petitioner had at all times promptly, fully, and completely discharged his part in the execution of the contract, and that, during the month of November, 1897, the petitioner performed the work under and in accordance with the provisions and stipulations of the contract. The alie *43 gation by the petitioner of performances on Ms part of the conditions of the contract was a necessary allegation. The petition would not have been good without it. Jones v. Perot, 19 Colo. 141. And by virtue of section 66 of the code, the general statements of performance contained in the petition were sufficient. The denial of these allegations of performance contained in the petition presented an issue of fact for trial; and if the answer had said nothing further, it was the duty of the court to receive it. But the petition averred that it was because the petitioner refused to grade the space between the property line and the curb line that the board denied the estimate which he demanded; and it assigned, as a reason for his refusal, advice which he had received, that the proceedings of the board and the city in respect to the grading, and the contract made in pursuance of those proceedings, did not include and were not intended to include the grading of the sidewalk areas in the district, and that any attempt to collect from the owners of the adjacent property the money for the payment of warrants issued to the petitioner for such grading would be in violation of the city charter. The answer meets these allegations by saying that the map and the details and specifications, upon wMch all the subsequent proceedings were based, and with reference to which bids for the work were called for and received and the contract with the petitioner executed, showed that the grading of the streets named in the contract should be from the lot line on one side to the lot line on the other; and alleges that the petitioner had refused to grade the street except from curb line to curb line. The answer also alleged that the petitioner had refused compliance with the contract in another respect, namely, in the matter of surfacing or rolling the roadway; and that this refusal applied to the very .work for which estimates were demanded.
The propositions which the learned counsel for the petitioner undertake to establish are, first, that by virtue of the provisions of the city charter the grading of the sidewalk areas cannot properly be included in a contract for grading *44 and curbing tbe streets; second, that by the terms of the contract itself the grading of the sidewalk areas was not included; and third, that if the contract did include the grading of the sidewalk area, and if, under the provisions of the charter the 'inclusion was illegal, the legal portion may be separated from the illegal portion of the contract and the latter enforced. The questions now to be determined arise upon the face of the answer, to a complete understanding of which some reference to the petition may be necessary, and such examination as we shall give to the foregoing propositions must be conducted in the light of the statements of the answer and petition and the law applicable to those statements. It is earnestly and ably contended that in the portions of the city charter which relate to public improvements the term “ street ” has a restricted meaning, and signifies the ground lying between the sidewalk areas on either side, and intended only for horsemen and vehicles. In the Century -Dictionary a street is defined as “ a public way or road, whether paved or unpaved, in a village, town or city, ordinarily including’ a sidewalk or sidewalks and a roadway, and having houses ox town lots on one or both sides.” In Kokomo v. Mahan, 100 Ind. 242, the court said: “ It is too well settled to admit of debate that the term ‘ street ’ in its ordinary acceptation includes sidewalks, and that it is always given that meaning unless the language with which it is associated changes or restricts its signification.” In Dickinson v. Worcester, 138 Mass. 555, it is said that “ sidewalks are a part of the street, although the word ‘ street ’ is sometimes used to denote that part of the street which is devoted to carriage travel.” It is held in Taber v. Graffmiller, 109 Ind. 206, that the word “ street ” embraces sidewalks, and that under an authority to improve streets a municipal corporation may improve sidewalks. To the same effect is the opinion in the Matter of Burmeister's Petition, 76 N. Y. 181. See also 2 Dillon’s Municipal Corporations, §780, n. 1. The Century Dictionary defines a sidewalk to be “ a foot walk by the side of a street or road; specifically, *45 a paved or otherwise prepared way for pedestrians in a town, usually separated from the roadway by a curb or gutter.” In Caliss v. Parker, 11 Kan. 384, Mr. Justice Brewer, following Mr. Webster, says that a sidewalk is “a raised way for foot passengers at the side of a street or road; a foot pavement.” Therefore, in the sense in which the terms are ordinarily understood, a street is a highway in a city or town, used by the public for the purposes of travel, either by means of vehicles or on foot, the portion used by vehicles and that used bypedestrians being distinct and separate; and a sidewalk is simply a pavement, or something in the nature of a pavement, laid or constructed on the portion set apart for travelers on foot. The word “street” is occasionally found in such connection that it signifies only the roadway, or the portion allotted to vehicles. The case of Himmelman v. Satterlee, 50 Cal. 68, serves to illustrate how this restriction of the meaning of the term is sometimes necessitated. The resolution of the board of supervisors of San Francisco was, “That Washington street from Yan Ness avenue to Polk street be macadamized and curbed with redwood curbs.” It was held that the roadway only was meant, because by the language of the statute, and also in accordance with the usual acceptation of the term “ macadamize,” the resolution could be applicable to nothing but the roadway. But except where such restriction is rendered necessary by the language in which the word occurs, or the character of the subject with which it is connected, by the term “street” is meant the entire highway.
We shall now look into the city charter to find in what connections and with reference to what subjects the word “ street ” is employed there; and what it was intended, or was not intended, to include. It is provided by sections 35 and 36 of article 3 as follows : “ The board of public works shall have exclusive management and control of the construction, reconstruction and maintenance of all public and local improvements, including the grading, paving, curbing or otherwise improving, of the streets, alleys and other public places, except parks, of the city; of all public, district and private *46 sewers; of all sidewalks, bridges, viaducts, tunnels and other like structures. * * * Said board shall have exclusive poAver to lay out, open, change, vacate, and fix or change the grading of any street, avenue, alley or public place, Avithin the city, subject to the approval of the city council by ordinance; and to order, contract for and execute, the improvement of any such street, alley or public place; to grade all of the streets, avenues, alleys and public places within the city; such work to be done either by contract or otherwise.”
We extract the following from article 7 :
“ Section 1. The city shall have power to contract for and make local improvements, and to assess the cost thereof Avholly or in part upon the property specially benefited, as hereinafter provided; all contracts for public improvements shall be awarded by the mayor, upon the recommendation of the board of public works, and the improvements shall be constructed by and under the ‘direction of said board, in accordance with specifications prescribed by said board. In all cases where the cost of local improvements is to be assessed wholly or in part upon the property benefited, the same shall be constructed by independent contract or contracts; but other public improvements may be constructed by day’s labor under the direction of the board.
“ Section 2. Whenever the board of public works shall by resolution order any of the local improvements herein mentioned, the same shall be authorized by ordinance; Avhieh ordinance shall be in form recommended by .the board of public works by indorsement thereon, and shall not be subject to amendment by the city council.
“ Section 3. The board of public works may order the grading, curbing and paving or otherAAÚse improving of the Avhole or' any part of any street or streets, alley or alleys or streets and alleys in the city of Denver, or any one or more of the said improvements. In case of grading only, or of grading and curbing only, the improvements may include the necessary cross-walks; and the board may thereafter, under the *47 conditions herein prescribed, do such further grading as may be necessary in paving or otherwise improving the same area.
“ Section 4. In case of the • improvement of any street as hereinabove provided, the cost of the improvement, except in the intersection of streets and alleys, and except the share to be paid bystreet railway companies, shall be assessed upon all the lots and lands abutting on the street improved, in proportion as the frontage of each lot or tract of land is to the frontage of all the lots and lands so improved, the sides of corner lots which sides abut on a street so improved being regarded as frontage; Provided, that where the real estate abutting on the street improved consists of lots or lands which are not of substantially equal depth, then the same may be assessed to a substantially equal depth, not less than twenty and not more than one hundred and fifty feet from the street improved, as the same may be determined by the board of public works.”
In sections 35 and 36-of article 3, and in sections 1, 2 and 3 of article 7, the word “ street ” is used, where it is used at all, without qualification or limitation of any kind; and there is nothing in the language where it occurs, or the subjects with which it is associated, to give it any special signification. Therefore, in accordance with the definitions given by the authorities, it means the entire space between the line of the lots on one side and the line of the lots on the other. But were any doubt of this conclusion possible, it would be set at rest by section 4 of article 7. The sense in which the legislature intended the term to be understood is there very clearly indicated. That section provides that the cost of the improvement shall be assessed against the lots and land abutting on the street. To abut is to join, press against, or rest upon. If the width of the street were only the space between the curbs, no lots could abut upon the street. Between the street and the lots would be the space set apart for sidewalk purposes ; the lots would abut upon that space and that space would abut upon the street. But that the lots may abut upon the street, the line of frontage of the lots must be the bound *48 ary of the street. The street must reach the lots on either side and cover the whole intervening ground.
But counsel for the petitioner point us to some passages in the charter from which they argue that the legislature must have regarded streets and sidewalk areas as things entirely distinct from each other. Before looking into the reasoning by which counsel arrive at their conclusion, we will ascertain what, ,under the provisions of the charter, a sidewalk is. Sections 9, 10, 11, 12 and 13 of article 7 are devoted to the subject of sidewalks. Those sections empower the board of public works to order the construction of sidewalks where none have been constructed, and the reconstruction of sidewalks which have been previously laid. They prescribe the method to be pursued in such construction or reconstruction, and in assessing the cost of the work against the property to which it is chargeable. A sidewalk is spoken of throughout as something to be constructed. To construct is to build or put together, and it is evident that the sidewalk of which the charter speaks is not the naked surface of the ground or the space between the lot line and the. curb line, but that, in accordance with the meaning given to the term by the standard authorities, it is a way, artificially prepared, built or laid upon the surface, and which, no matter of what material it may be composed or constructed, may without impropriety be called a pavement. Counsel has pointed us to section 20 of article 2, in which the powers of the city council are enumerated, and in which it is authorized by ordinance “to open, alter, abolish, widen, extend, establish, grade, pave or otherwise improve and keep in repair streets, avenues, lanes, alleys, parks and other public places, sidewalks, drains and sewers; and to provide for and require the construction of sidewalks; ” and they ask, “ If, when the legislature gave certain powers to the city council and said it had power to * * * grade * * * ‘streets,’the term‘streets’ includes everything from lot line to lot line, why did they go on and use the word ‘ sidewalks ’ ? In other words what sense does it make, if you start out with the proposition that *49 the word ‘street’ includes everything from lot line to lot line, to say ‘to * * * grade streets * * sidewalks’?” Again, referring to section 35 of article 3, from which we have quoted, and which vests in the board of public works the management and control of the construction of public improvements, including the grading of streets and the management and control of sidewalks, they inquire why, if streets include sidewalks, it was necessary to include sidewalks by name. The theory of counsel seems to be that each of the several acts authorized by the former section applies to each of the several objects which it enumerates. To so construe the section would make it a grotesque piece of legislation. The terms “grade” and “pave” are hardly applicable to drains and sewers. A sidewalk, as the word is used in the charter, and as it is commonly understood, is a pavement of some kind; so that if these words were intended to apply to it, we have a provision to grade a pavement and pave a pavement. Such an application of terms would involve an absurdity. It is wholly unnecessary and was never intended. A street may be opened, established, graded, paved, improved and kept in repair. By virtue of the special charter provisions on the subject, sewers may be established, constructed and maintained, and by virtue of the section under consideration they may be kept in repair, and sidewalks, after they have been established and constructed by the board of public works, may by virtue of the same section be kept in repair by the city. Each act mentioned has reference to the object to which it is appropriate and to no other. The reason why here and elsewhere sidewalks receive distinct mention is not obscure. The grading of the street is regulated by one set of charter provisions and the laying of the sidewalks upon it by another and entirely distinct set. They are different acts, done by different methods. The fact that the streets and the sidewalks are separately named in the charter furnishes no argument against the proposition that the street includes the sidewalk. Indeed we are unable to see how the provisions which are applicable to street improvements, and *50 to nothing else, and the separate provisions which are applicable to the construction of sidewalks upon the improved streets, and to nothing else, could have been enacted without mailing separate mention of streets and sidewalks.
Section 10 of article 7 contains a provision that in all cases of the construction or reconstruction of sidewalks, the contracts may include all necessary excavations and embankments from lot line to curb line in front of the property improved. This section is used by counsel in support of their general theory, but we are unable to see how any question of importance to the determination of this case is affected by it. We do not think it was intended as a provision for the grading of the sidewalk areas. The excavations and embankments to which it refers do not involve grading in the sense in which the term is used by the charter in providing for the improvement of streets. The sidewalk area, as part of the street, is graded when the street is graded. The construction of sidewalks is separately provided for. If the street has been graded, the sidewalk is laid upon the graded surface. The burdens of sidewalk construction and of street grading are differently distributed; and the section must not be so interpreted as to bring it into conflict with other charter provisions. Our opinion is that the language was intended only to provide for the reduction of the accidental inequalities of the ground to a uniform and even surface, so as to furnish a proper bed on which to lay the walk. We entertain no doubt that a contract, entered into by the city through its proper agencies, and in conformity with the provisions of its charter, for the grading of a street, which uses the term “street” without qualification, is satisfied only by the grading of the entire width of the highway from the line of lots on one side to the line of lots on the other; and that a refusal by the contractor to grade the street except between the curb lines would involve a violation of his contract.
The last position taken for the petitioner is that as the price of the work was payable in monthly installments of eighty per cent of the amount due for the preceding month, *51 he was entitled to his estimate for November, no matter where the grading was done nor what it included. We cannot anticipate what facts may be disclosed upon a trial, or how the evidence will affect his right to an estimate for that month as embracing a portion of the work agreed to be done. The question now is, ought permission to have been given to file the answer ? The petition alleged performance of the work, and particularly the work done in November, in accordance with the stipulations and provisions of the contract. Without this allegation the petition would not have been good. On a contract like this, performance by the complaining party of the conditions on his part is essential to a recovery. The performance must be alleged, and if denied, proved. The performance which the petition alleges is denied by the answer, so that to determine whether the relief demanded should be adjudged the facts must be investigated, and in order to such investigation the answer must be filed. The answer puts in issue material allegations of the petition, and sets forth other matters, which, if true, would defeat the purpose of the petitioner in this proceeding. Such being the case, the court should have allowed it to be filed, and its refusal to do so was error.
The judgment is reversed, and the cause remanded, with instructions to the district court to permit the answer to be filed, and proceed to a hearing of the case upon its facts.

Reversed.