W. B. TOPLIFF *et al.*

*v.*

THE CITY OF CHICAGO.

*Opinion filed April 16, 1902.*

1. MUNICIPAL CORPORATIONS—*city council may designate portions of street for roadways.* A city council has power to designate portions of the streets to be used for roadways and other portions to be used for sidewalks.

2. SAME—*city council not required to improve full width of roadway.* The city council has power to improve so much of the roadway in width as it may deem necessary for the use of the public.

3. SPECIAL ASSESSMENTS—*when general ordinance fixing width of sidewalks is admissible.* Where it is claimed that an improvement ordinance requiring the roadways of intersecting streets to be curbed and paved between the street lines of the street to be improved is uncertain in description because certain of such roadways have not been made, it is competent to introduce a general ordinance establishing the width of sidewalks in streets of specified widths, for the purpose of showing width of roadways therein.

4. SAME—*court must accept evidence in record as to benefits.* The Supreme Court cannot arbitrarily say that property at an equal distance on either side of the street to be improved is equally benefited by the improvement, but must accept the proof which appears in the record as correct upon that point.

APPEAL from the County Court of Cook county; the Hon. GEORGE K. INGHAM, Judge, presiding.

SAMUEL J. HOWE, for appellants.

WILLIAM M. PINDELL, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This is an appeal from the judgment of the county court of Cook county confirming a special assessment levied to pay the cost of curbing, grading and paving with granite top macadam One Hundred and Fifteenth street, from Michigan avenue to Wentworth avenue, in the city of Chicago.

Section 1 of the ordinance provides that "the roadway of One Hundred and Fifteenth street from the west line of Michigan to the east curb line of Wentworth avenue, said roadway being thirty-eight feet in width, and also the roadways of all intersecting streets and alleys extended from the curb line to the street line produced on each side of said One Hundred and Fifteenth street between said points, * * * be improved," etc.; and later in the same section is the following provision: "And the best quality of sandstone curb-stones shall be set on edge along their length on each side of the roadways of all intersecting streets and alleys extended from the curb line to the street line produced on each side of said One Hundred and Fifteenth street between said points."

In support of an objection that the ordinance was insufficient in matter of description, it was proven the roadways of certain of the streets which intersected One Hundred and Fifteenth street had not been made and that said streets had not been curbed. This proof was produced to show that the width of the roadways of the intersecting streets which were to be curbed and paved at the intersections had not been established and could not be ascertained. The city, however, produced in evidence, against the objections of the appellants, section 1814 of the Municipal Code of the city of Chicago, as follows: "All sidewalks which may hereafter be ordered by the city council shall be constructed under the superintendence and to the satisfaction of the department of public works, and shall be of the width herein specified,

unless a different width shall be specified in the order, to-wit: On all streets which are one hundred feet wide and upward, twenty feet; on streets eighty feet and upward in width, sixteen feet; on streets sixty-six feet and under eighty feet in width, fourteen feet; on streets sixty feet and under sixty-six feet in width, twelve feet; on streets fifty feet and under sixty feet in width, ten feet; on streets sixty feet and more than fifty feet in width, ten feet; and on streets less than fifty feet and more than forty feet in width, six feet; and on streets thirty feet and less than forty feet in width, four feet. When built of full width, a substantial curbing of stone or white oak plank not less than three inches in thickness, well tied in, shall be laid on the outer edge of the sidewalk." The engineer of the board of local improvements testified that with the aid of this section of the code all uncertainty as to the width of the roadways of the intersecting streets was removed. Appellants also objected to this testimony of the engineer, and now contend it was error to admit it, and also error to admit the ordinance which furnished the basis for it, and further argue that, even if admissible, the width of the roadways of the intersecting streets are not thereby definitely established.

We think section 1814 of the Municipal Code competent testimony. The city council has ample power to designate portions of the streets of the city to be used by horsemen and vehicles and other portions to be used by pedestrians. (*Kohlhof* v. *City of Chicago*, 192 Ill. 249; *City of Bloomington* v. *Bay*, 42 id. 503.) That portion intended for the use of horsemen and vehicles is usually and properly known as the roadway of the street, and the other portions of the streets are not improperly known as the sidewalks,—that is, spaces reserved for pedestrians to walk upon on either side of the roadway. The "curb line" of a street is the dividing line between that portion of the street to be used by horsemen and vehicles, called the roadway, and that portion of the street re-

served on each side of the roadway for the use of pedes-
trians.  Though the roadway of the intersecting streets
in question had not been improved by grading or paving,
yet the requirements of section 1814 of the Municipal
Code would enable any civil engineer, or even persons
lacking in the technical knowledge of engineering, to de-
termine the boundary lines of that portion of the street
designated to be occupied as the roadway of the street,
and those lines would be the "curb lines" of the street.

The ordinance in question provided for the improve-
ment of such roadways of such intersecting streets pro-
duced into the intersection of the streets, from the street
line of One Hundred and Fifteenth street to the curb line,
or line of the roadway, of One Hundred and Fifteenth
street.   There was proof that sidewalks laid along some
of the intersecting streets were of less width than was
required by section 1814 of the code, and also testimony
tending to show that the city had ordered the roadways
of State street and Perry avenue,—two of the streets
which intersect One Hundred and Fifteenth street,—to
be paved, and that the pavements so ordered to be made
did not cover all the space between the sidewalk spaces
as established by section 1814 of the said code; but it
was further proven the sidewalks referred to had not
been built by the city but by the proprietors of the land
which had been subdivided, and the fact the city had
determined not to improve the roadway of those streets
throughout the full width of the space intended to be
devoted to the uses of a roadway, had no effect to repeal
the provisions of section 1814.   It is within the discre-
tion of the city council, in constructing a walk on that
portion of the street reserved for pedestrians, to build
the structure only of that breadth that it shall deem
necessary, and the city council has the same power
and discretion when improving the roadway of a street.
(*Murphy* v. *City of Peoria*, 119 Ill. 509.)   Only so much
in width of the roadway may be improved as the city

council may deem necessary to be so fitted for the use of the public.

Property to the distance of four hundred and thirty-nine feet south from One Hundred and Fifteenth street was assessed as being benefited by the improvement while no property was assessed as being benefited beyond the distance of one hundred and twenty-five feet north of the proposed improvement. It is insisted that property beyond the distance of one hundred and twenty-five feet north of One Hundred and Fifteenth street must have been benefited by the proposed improvement in like manner as property more than that distance south of One Hundred and Fifteenth street, and upon this insistence is based the complaint that the property north of and within four hundred and thirty-nine feet of One Hundred and Fifteenth street has been omitted from the assessment, to the injury of the appellants. Appellants produced no testimony to the effect that the improvement benefited property north of One Hundred and Fifteenth street beyond the distance of one hundred and twenty-five feet. The only testimony upon this point was that of a witness for the appellee city, and his conclusion was adverse to the contention of the appellants. We cannot arbitrarily declare that the improvement must have benefited the property to an equal distance upon either side of One Hundred and Fifteenth street, but must accept the proof which appears in the record as being correct upon the point.

The testimony as to the extent to which the property of the appellants will be benefited by the improvement of the street is quite conflicting. That of the witnesses in behalf of the appellee city, standing alone, amply supports the judgment, while that produced in behalf of the appellants, standing alone, would establish that the benefits to the property were but little more than half of the sums which the lots were adjudged to pay. The question was one resting wholly in the opinions of the different

witnesses, and the appearance of the respective witnesses while on the stand, their manner of testifying and their apparent intelligence and judgment, had very much to do with the weight to be accorded to the opinions expressed by them. These considerations, and the fact that we are not authorized to interfere with a finding of this nature unless we can say that it is palpably against the weight of the evidence, must lead us to a judgment of affirmance. This is true even in cases where, if governed wholly by the testimony as written in the record, we might feel better satisfied with a different conclusion.

Some complaint is made as to the rulings of the court on objections as to the admissibility of evidence, but with one exception, hereafter noticed, counsel do not cite us to the page of the abstract where the subject matter of the complaints can be found. The statements and discussion in the brief of counsel disclose the alleged errors related in the main to matters of merely collateral interest and altogether of minor importance, and such as could not constitute error reversible in character. The objection which the citation in the abstract aids us to examine is, that the appellant Topliff, after having, as a witness in his own behalf, testified that in his opinion he could not sell his property for any greater sum after the completion of the improvement of the street than before, added that his experience was that other improvements which had been put in in that vicinity had not increased the value of his property, and that the court ordered that his expression as to his experience of the effect of other improvements should be stricken from his testimony. We do not so understand the abstract. It appears from the abstract that after making the statement as to his experience, etc., the witness said, "I am willing to pay $50 a lot for the general public," and it was this latter remark of the witness which was stricken out.

The judgment must be and is affirmed.

*Judgment affirmed.*