ERNEST C. WETMORE

*v.*

THE CITY OF CHICAGO.

206    367
214    156

*Opinion filed December 16, 1903.*

SPECIAL ASSESSMENTS—*when ordinance for house drains is invalid for uncertainty.* An ordinance for laying house drains which is so indefinite as to leave it uncertain whether such drains shall terminate at the lot lines or four feet inside of the curb line, between the roadway and sidewalk space, is invalid for uncertainty.

APPEAL from the County Court of Cook county; the Hon. R. A. RUSSELL, Judge, presiding.

MARSTON & TUTTLE, for appellant.

ROBERT REDFIELD, and WILLIAM M. PINDELL, (EDGAR BRONSON TOLMAN, of counsel,) for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

This is an appeal from an order of the county court of Cook county, confirming a special assessment for the cost of six-inch drains in South Forty-first avenue from West Twenty-seventh street to West Thirty-first street in the city of Chicago. The appellant filed objections to the confirmation of the assessment, among which was the objection, that the description and location of the proposed improvement, contained in the ordinance and petition, were indefinite and uncertain, and that the ordinance did not definitely prescribe the nature, extent, locality and description of the improvement. The objections of the appellant were overruled.

What the exact width of South Forty-first avenue was between the cross-streets above named is not clearly shown by the evidence introduced. It would appear, however, from the statements of counsel and from the character of the questions propounded by them to the witnesses, that the roadway of the street was either eighty feet

wide, or sixty-six feet wide. If the street is eighty feet wide, what is called the "sidewalk space," that is, the space between the curb line and the lot line, would be sixteen feet wide. But if South Forty-first avenue is sixty-six feet wide, such sidewalk space would be fourteen feet wide. The city introduced in evidence the general sidewalk ordinance, being section 1814 of the Revised Municipal Code of Chicago of 1897, which is set forth and commented upon in *Topliff* v. *City of Chicago*, 196 Ill. 215. The roadway of the street, as was stated in *Topliff* v. *City of Chicago, supra,* is that portion of the street, intended for the use of horsemen and vehicles; and the other portions of the street are known as the sidewalks, that is, the spaces reserved for pedestrians to walk upon on either side of the roadway. The "curb line" of a street is the dividing line between the roadway and that portion, reserved on each side of the roadway for the use of pedestrians. The evidence in this case shows that the "sidewalk space," which is the space between the curb line and the lot lines of the property owners, owning lots abutting upon the street, is not always actually used or improved, so as to be used for sidewalk purposes. In other words, the portion of the sidewalk space, actually used for the purposes of a sidewalk, and which to that end may be paved with wood, or cement or stone, may be, and often is, narrower than the space between the curb line and the lot line.

In the case at bar, the engineer of the board of local improvements made an estimate of the cost of laying a drain of six inches internal diameter of the best quality of vitrified tile pipe, three-fourths of an inch in thickness, from each of the lots, blocks, tracts or parcels of land, abutting on South Forty-first avenue from West Twenty-seventh street to West Thirty-first street, to connect with the public main sewer in South Forty-first avenue between said points, including labor, materials and all other expenses attending the same, as provided

by law, namely, ninety drains costing $12.00 each, making a total of $1080.00; and, in such estimate, the engineer certified that in his opinion the above estimate did not exceed the probable cost of the above proposed improvement.    On the same day, to-wit, April 9, 1903, the board of local improvements made a written recommendation to the mayor and aldermen of the city, and therewith submitted an ordinance for six-inch drains in South Forty-first avenue from West Twenty-seventh street to West Thirty-first street, together with said estimate of the cost of said improvement contemplated therein.

It will be observed that, in the engineer's estimate of the cost, the drains were to be laid from each of the lots, blocks, tracts or parcels of land, abutting on South Forty-first avenue, to the public main sewer in the middle of the street.    If the sidewalk space on South Forty-first avenue, that is, the space between the curb line and the lot lines, was fourteen feet wide, then the length of each drain to be laid would be fourteen feet, added to the width of half the street.    If the sidewalk space was sixteen feet wide then the length of each drain would be sixteen feet, added to half the width of the street.

By section 2 of the ordinance for the improvement here in question it was provided, that a drain of six inches internal diameter of the best quality of vitrified tile pipe, three-fourths of an inch in thickness, should be, and was thereby ordered, laid from each of the lots, etc., of land thereinafter described, abutting on South Forty-first avenue, to connect with the public main sewer in South Forty-first avenue.    But, after describing the lots of the property owners abutting upon the street, the ordinance also provides as follows: "Each of said drains shall rise from its connection with said main sewer, at the rate of one-fourth of an inch to one foot lineal to its terminus at a point four feet within the sidewalk space as established."    The engineer of the board was placed upon the stand as a witness, and testified as to the construction

of the drains under the terms of the ordinance, as follows: "An excavation would first be made to permit the laying of the drain, the drainage to be conducted from a point four feet within the curb line, or within the sidewalk space, to the main sewer, to the point where the connection is to be made. Then the drain pipe is laid in such a manner that the elevation of the grade would rise from the first pipe in the sewer, at the rate of a quarter of an inch for every foot, and terminate four feet inside the curb line. * * * It is built from the center of the street up to the curb line and four feet further; * * * if the sidewalk space was sixteen feet, the end of the drain would be twelve feet from the lot line. * * * The curb line is the division between the sidewalk space and the roadway proper; on a sixty-six foot street the sidewalk space is fourteen feet; * * * it would be ten feet from the lot line."

It thus appears that, in one part of the ordinance lying at the basis of the present improvement, the drains were to extend from the lot lines to the sewer pipe in the center of the street, and that, by another part of the ordinance in question, the drains were only to extend from a point four feet within the sidewalk space to the sewer in the center of the street. If the sidewalk space is fourteen feet wide, then the drain, which extends from a point four feet within the curb line to the sewer pipe in the center of the street, would be ten feet shorter than a drain, extending from the lot line to the sewer in the middle of the street. If the sidewalk space is sixteen feet wide, then the drain, extending from a point four feet within the curb line, or within the sidewalk space, to the main sewer, would be twelve feet less in length than a drain, extending from the lot line to the main sewer in the street.

It is thus left uncertain by the terms of this ordinance, whether the contractor, laying these drains, should make them long enough to extend from the lot lines to the

main sewer, or whether he should only extend them from
four feet inside of the curb line to the main sewer.  A
drain, extending from a point four feet inside the curb
line, and being either ten or twelve feet shorter than a
drain extending from the lot line, would of course cost
less than a drain extending from the lot line.  It is to
be supposed that the contractor, making the improve-
ment, would put in the shorter drain, instead of a longer
one, as it would be more for his interest to do so, the
expense being less in the one case than in the other.
The defect in the ordinance is, that it leaves it uncertain
how long these drains are to be, and also leaves it to
the discretion of the contractor, constructing the drains,
whether he shall extend them from the lot lines to the
main sewer, or from a point ten or twelve feet away from
the lot lines to the main sewer.

In his estimate of the cost of the improvement, the
engineer estimates the cost of drains to run from the
lot lines to the main sewer.  He makes no estimate of
the cost of drains to run from a point four feet within
the sidewalk space to the main sewer.  The drains, run-
ning from the lot lines to the main sewer, were to cost
$12.00 a piece, and the whole cost was to be $1080.00.
The amount, assessed against the property owners, was
$1080.00, the cost of constructing all the drains from the
lot lines to the main sewer.  But inasmuch as, under the
terms of this ordinance, the contractor could construct
drains ten or twelve feet less in length than those, whose
cost was estimated in the estimate of the engineer, the
property owners could be assessed for more than the ac-
tual cost of the drains.  In other words, under this ordi-
nance, they could be compelled to pay for long drains,
when only short drains were constructed.  The law will
not tolerate any such imposition as this upon property
owners.

Section 7 of the act in regard to local improvements
provides "that in proceedings only for laying, building,

constructing or renewing of any sidewalk, water service pipe or house drain, no resolution, public hearing or preliminary proceedings leading up to the same shall be necessary. In such proceedings the board may submit to the city council or board of trustees, as the case may be, an ordinance, together with its recommendation, and the estimated cost of the improvement, as made by the engineer as herein provided, and such proceedings shall have the same force and effect as though a public hearing had been had thereon." (4 Jones & Addington's Supp. to Starr & Curt. Ann. Stat. p. 151).

It thus appears that, in this proceeding for the laying of house drains, the property owner is not entitled to any public hearing, and has, therefore, no opportunity to call attention to the difference. between the character of the improvement in the estimate of the engineer, and the character of the improvement specified in the ordinance.

When the ordinance is presented to the city council by the board of local improvements, the statute requires that it shall be accompanied by the estimate of the engineer and the recommendation of the board of local improvements. In the present case, by section 3 of the ordinance, the recommendation of the board of local improvements, together with the estimate of the cost of the improvement made by the engineer, are approved by the common council, and the ordinance recites that both the recommendation and the estimate of the cost are attached to the ordinance. The estimate of the engineer is, therefore, a part of the ordinance itself. The cost of the improvement to be assessed against the property owners is the cost fixed in the estimate of the engineer, and the improvement, provided for in the ordinance, must be the improvement recommended by the board of local improvements. Here, there was no such improvement, as the construction of drains from a point four feet within the sidewalk space to the main sewer, provided for,

or recommended, by the board of local improvements, or whose cost was estimated by the engineer of the board.

We have held that, in view of the extraordinary powers conferred upon the board of local improvements, the requirements as to the preliminary steps to be taken before the passage of an ordinance for the improvement, should be strictly enforced, and that the *prima facie* case, made by the recommendation of the board, is overcome by proof showing a substantial variance from the preliminary requirements of the law. We have also held that these requirements are for the benefit and protection of the owners of property to be assessed, and that the proceedings prior to the adoption of the ordinance, required by the statute, are jurisdictional, and that without them no valid ordinance can be passed and no valid assessment can be made. (*Clarke* v. *City of Chicago*, 185 Ill. 354; *Bickerdike* v. *City of Chicago*, 203 id. 636).

Here, there is a substantial variance between the estimate of the engineer and the recommendation of the board of local improvements on the one side, and the ordinance passed by the common council on the other. This is so, because the drains, mentioned in the engineer's estimate and in the recommendation of the board, are to extend from the lot lines to the main sewer in the middle of the street, while, by the terms of the ordinance, they may extend either from the lot lines, or from points four feet within the sidewalk space to the main sewer in the middle of the street. It is thus clear that the ordinance is uncertain and indefinite in its description of the improvement, and does not comply with the provision of the statute, which requires the ordinance to prescribe the nature, character, locality and description of the improvement. In *Sanger* v. *City of Chicago*, 169 Ill. 286, an ordinance was condemned where the description and locality of the improvement were uncertain. In *County of DeWitt* v. *City of Clinton*, 194 Ill. 521, an ordinance, which provided for paving and curbing the public square, and

left uncertain the question whether it was intended to pave the streets surrounding the square, or the area embraced within the square, was condemned, as being "altogether too indefinite to meet the requirements of the statute."

For the reasons above stated, we are of the opinion that the county court erred in not sustaining the objections to the confirmation of the assessment, as the same are herein stated.

Consequently, the judgment of the county court is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*