(No. 14937.—Judgment affirmed.)
W. H. OWNBY, Trustee, Appellant, *vs.* THE CITY OF MAT-
TOON, Appellee.

*Opinion filed February 21, 1923.*

1. SPECIAL ASSESSMENTS—*when an ordinance does not provide double improvement.* A paving ordinance does not provide for a double improvement merely because it provides for the laying of cross-tile, which are primarily for the drainage of storm water from the surface of the pavement but which may be incidentally used for house connections where so located as to accomplish that purpose.

2. SAME—*when there is no fatal variance between estimate and ordinance.* There is no fatal variance between the engineer's estimate and the ordinance for a paving improvement where the ordinance describes the construction of the curb in detail and provides for a top-dressing of sand over the pavement, which was a standard method of construction of the pavement provided for, while the estimate merely describes the curb as a combined curb and gutter of certain dimensions and does not specify the sand dressing.

3. SAME—*when a paving ordinance sufficiently locates curb and gutter.* A paving ordinance sufficiently locates the curb and gutter provided for, where it gives the width of the pavement from curb to curb and refers to the profiles or maps of the proposed improvement, which definitely locate the curb and gutter.

4. SAME—*when maker of an assessment is "competent" within meaning of statute.* The statute does not establish any standard of ability or experience for the maker of an assessment roll but it merely requires that the assessment be made by a "competent" person, which means only that such person shall be free from legal disqualification.

5. SAME—*what testimony is not proper to impeach assessment roll.* Where the assessment roll and the affidavit of the superintendent of assessments contain all the requirements prescribed by law, and it is not claimed that the superintendent was legally disqualified or that there was any fraud in making the roll, the assessment roll cannot be impeached by testimony designed to show that the superintendent did not investigate, deliberate and decide in the manner required by law but merely adopted the suggestions of those who assisted in making the roll.

6. SAME—*what determines whether assessment against lots of objector is unjust.* In determining whether a paving assessment against the lots of an objector is unjust it must be considered what benefit the particular property will receive from the improvement

as a whole; and this question cannot be determined by comparing the assessment of the property of the objector with the assessment of other lots on the assessment roll.

7. SAME—*statute prescribes no method for spreading an assessment.* There is no prescribed method, plan or basis under the law for the spreading of any special improvement assessment, and it does not matter what plan or basis may be adopted provided the property is not assessed more than it is specially benefited.

8. SAME—*when finding that property is not assessed more than benefited will not be disturbed.* In a special assessment proceeding where the jury have viewed the premises and have heard the testimony, their conclusion that the property is not assessed more than it will be benefited nor more than its proportionate share of the cost of the improvement will not be set aside by the Supreme Court unless the finding is plainly against the weight of the evidence.

APPEAL from the City Court of Mattoon; the Hon. I. B. CRAIG, Judge, presiding.

EMERY ANDREWS, and RAYMOND G. REAL, for appellant.

HARRY I. HANNAH, (CHARLES H. FLETCHER, of counsel,) for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is a special assessment proceeding involving the spreading of an assessment under the Local Improvement act. On January 3, 1922, the board of local improvements of Mattoon, Illinois, held a meeting and adopted a resolution providing for the grading, draining, curbing, guttering, paving and otherwise improving Richmond avenue from Twenty-first street to Thirty-third street. At the same meeting an itemized estimate of the cost of the proposed improvement was submitted by the city engineer to the board. Notice was given of a public hearing before the board, and such hearing was had on January 14, 1922, at which time the board approved its earlier action in the matter and directed the city attorney to prepare an ordinance and submit the same to the city council, together with the

engineer's estimate and the recommendation of the board. The necessary ordinance was passed by the city council on March 7, 1922, and directed the city attorney to file a petition in the city court of Mattoon praying that an assessment be levied to pay for the proposed improvement. The petition was filed May 2, 1922, and on that day the court entered an order directing the levy of the assessment and approving the appointment of Mary Sutherland as superintendent of special assessments, she having been previously appointed as such by the president of the board of local improvements on April 28, 1922, and directing her to prepare the assessment roll. The superintendent of assessments on May 2, 1922, took the necessary oath, and on May 3 the assessment roll, with the required affidavit of the superintendent, was filed in the clerk's office of the city of Mattoon. The necessary notices were given and hearing on the confirmation of the assessment had on May 20. Appellant, as trustee for Carrie Kingman, the owner of twenty-five or twenty-six vacant lots on the avenue to be improved, ten of which lots are between Thirty-second and Thirty-third streets and three between Twenty-ninth and Thirtieth streets, filed various objections to the confirmation of the assessment. Upon a hearing the court overruled all legal objections, and at a later hearing of objections before a jury it found the objector's property was not assessed for more than the special benefits derived nor more than its proportionate share of the cost of the improvement. A judgment was entered confirming the assessment roll, and the objector has prosecuted this appeal.

The first error argued in the brief of appellant is that the ordinance provides for 550 feet of tile drains to be laid crosswise in the street to the curb line, 100 feet apart; that these tile are for house connections; that they are so laid as not to afford house connections for ten of appellant's lots, but their cost is distributed over all the lots without regard to whether they afford house connections for some of them.

Goetz, the engineer, testified the primary purpose of these cross-tile was the drainage of storm water from the surface of the pavement, and that man-holes were so located as to accomplish that purpose. They can be used, it seems, for house connections where their location is such as to make that practicable. The ordinance providing for the laying of these tile refers to them as storm-water drains. Appellant's objection is that these tile made the ordinance one for a double improvement. They were a part of the main improvement and do not render it a double improvement. *City of Elmhurst* v. *Hohmeyer,* 297 Ill. 430.

The second error insisted upon is that there is a variance between the engineer's estimate and the ordinance in that the estimate makes no provision for a top-dressing of sand while the ordinance so provides. The estimate provides for the amount of yardage of brick paving, the cushion therefor, the base of the paving, and the filler to be used in the cracks for the purpose of binding the brick together and making a uniform surface. Subdivision (*d*) of the ordinance provides for a top-dressing of sand of from twenty to twenty-five pounds to the square yard, spread uniformly immediately after the application of the filler, then to be rolled with a hand roller so as to form a uniform mat over the surface of the pavement. As the engineer's estimate did not mention sand to be used with the "bituminous mastic filler," it is insisted there was a variance between the estimate and the ordinance. The engineer testified the tar and sand used for filler are spread over the top so there will be a slight excess, and a top-covering of sand is spread so the filler will not adhere to shoes of pedestrians; that the filler and top-dressing are necessary to a complete pavement. He further testified the estimate did not specifically provide for twenty-five pounds of sand for top-dressing, and a contractor looking at the estimate alone would not know that was required. The top-dressing was a standard method of construction, and it has been held that the estimate of cost

need not contain a complete inventory of every article that is to enter into the construction of the improvement. *Village of Donovan* v. *Donovan*, 236 Ill. 636.

It is argued under point 3 of appellant's brief that a fatal variance exists between the estimate and ordinance because the estimate provides for 9000 feet of curb five inches in width, etc., while the ordinance specifies the curb shall be five inches wide at the top and six inches wide at the bottom. The estimate describes the curb to be 9000 lineal feet of combined curb and gutter, the flag portion to be thirty inches in width and six inches in depth and the curb portion to be five inches in width and six inches in height. The ordinance simply describes the combined curb and gutter in detail, specifying how it shall be made. The curb is still a five-inch curb, but the ordinance merely prescribes in detail for its proper construction and as to what the curb shall be where it joins the gutter flag. This objection was properly overruled.

Under point 4 it is claimed the ordinance is invalid because the curb and gutter is not definitely located. From the ordinance the width of the pavement is described definitely, with its width given on each side of the center of the street and to extend from curb to curb. This, with the profiles and map attached to the ordinance, locates the curb and gutter without question. The profiles or maps referred to, mentioned in or attached to the ordinance, are a part of it. *City of Hillsboro* v. *Grassel*, 249 Ill. 190.

Point 5 insisted upon by objector is that the assessment against objector's property is void because it was not made by the superintendent of assessments but by Frank Bishop, an engineer in the employ of the city engineer. Appellant put Mrs. Sutherland, superintendent of assessments, on the stand and attempted to question her for the purpose of showing she was not capable of making the assessment, and that she, in fact, did not make the assessment but copied the roll, which she testified was in her handwriting, from one

prepared by the assistant city engineer. The court sustained objections to that line of examination. Appellant offered to prove by Bishop, assistant city engineer, that he made the assessment and Mrs. Sutherland merely copied and filed it. The court sustained an objection to this offer. Bishop was permitted to testify that he and city engineer Goetz figured the basis of the assessment and figured out the roll from that basis; that he did not file the roll and did not know whether Mrs. Sutherland copied the roll she filed in court from one he prepared or not; that he never talked to her about it and had nothing to do with the roll filed in court. He thought the roll he prepared was given to Mrs. Sutherland by Goetz, but did not know whether the figures, description and names in the assessment roll filed were the same as in the roll he prepared. He testified he had prepared assessment rolls for most all of the public improvements made in Mattoon for the last eighteen years. The statute requires the assessment to be made by a "competent" person, which means only such person shall be free from legal disqualification. The law does not establish any standard of ability or experience. (*City of Marengo* v. *Eichler,* 245 Ill. 47.) The assessment roll cannot be impeached by requiring the superintendent of assessments to answer questions designed to show she did not investigate, deliberate and decide in the manner required by law. (*City of Belleville* v. *Mitchell,* 273 Ill. 136.) The assessment roll was in legal form and the affidavit of the superintendent contained all the requirements prescribed by law. It was not claimed by appellant that the superintendent of assessments was legally disqualified or that there was any fraud in making the roll. It was sought to show she had received assistance and adopted the suggestions of those who assisted her. This, we think, could not render the roll illegal, if true. The plan of the improvement and estimate of costs had been approved and adopted by the board of local improvements and the city council, and these could not be

altered by the assessment roll. The superintendent of assessments could only prepare an assessment roll of benefits against the property assessed. The court did not err in its rulings on this question.

There is no merit in the sixth error, where it is alleged no superintendent of assessments was appointed. The superintendent was appointed by the president of the board of local improvements and her appointment was approved and confirmed by the city court, at which time she was directed to levy the assessment. *Storrs* v. *City of Chicago,* 208 Ill. 364.

The seventh error complained of is that the assessment was not an equitable and just distribution of the cost of the improvement between the parcels of property, and the court should have ordered the re-casting of the assessment roll. It is stated from the assessment roll that each lot fronting on the improvement is assessed $375 for each fifty-foot front. The chief testimony offered by objector on this point was in showing the value of corner and inside lots closer in to the city and comparing the assessment on those lots with the assessment against the lots of objector. The comparison of the assessment upon the property of objector with the assessment upon other lots on the roll furnishes no conclusive or positive rule for determining the question of unjust distribution. In any local improvement work where the matter of benefits is being considered or is in controversy, the point to be determined is what benefit the particular property will receive from the improvement as a whole. The lots here involved were vacant at the time the assessment was made but are in a location adaptable as a residential district, which, by the proof offered, tends to show they will be brought into accessibility by the making of the improvement. It matters not what plan or basis may be adopted for the spreading of an assessment, the property affected cannot be assessed more than it is specially benefited. There is, however, no prescribed method, plan or

basis under the law for the levying of any special improvement assessment. We cannot say from a consideration of this point in the case that there has been any inequality or unjust discrimination in the spreading of the assessment.

The eighth and ninth points presented as errors are that the verdict of the jury is contrary to the law and the evidence because the lots of objector were assessed more than they were benefited and more than their proportionate share of the improvement. The testimony offered before the jury was conflicting. The major portion of the evidence offered by objector was given by some six or eight witnesses, who either lived or owned property on the street to be improved. Their testimony, with that offered by two real estate dealers, tended to show the assessment upon the property was in excess of the benefits to be received. The testimony offered on behalf of the appellee was that of real estate men, business men and some owners of property on the street to be improved. Their testimony, as a whole, tended to show the assessment did not exceed the benefits to the property. The jury heard all of the testimony offered by both sides. It also had the opportunity of observing the witnesses, it viewed the premises affected by the improvement, and reached the same conclusion as did the superintendent of assessments,—that the property of objector was not assessed more than it was benefited nor more than its proportionate share of the cost of the improvement.

We cannot say, after consideration of the evidence produced, that the finding of the jury was plainly against the weight of the evidence. *Topliff* v. *City of Chicago,* 196 Ill. 215; *Allen* v. *City of Chicago,* 176 id. 113.

We are of opinion the court did not err in overruling appellant's objections and in refusing to re-cast the assessment.

The judgment is affirmed.          *Judgment affirmed.*