**Julia Benison, Appellee, v. John Dembinsky, Appellant.**

**Gen. No. 7,487.**

1. MUNICIPAL CORPORATIONS—*validity of ordinance restricting use of sidewalks, cross walks and streets by pedestrians.* An ordinance providing "pedestrians shall keep to the right upon all sidewalks, cross walks, roadways and passageways, and shall keep off of road-

ways except when crossing at street intersections and getting in and out of street cars or vehicles. Pedestrians shall cross roadways at right angles (never diagonally) and on the cross walks. Pedestrians shall observe traffic regulations before stepping from curb and shall watch for traffic-officer's signal and heed traffic-signs and limitlines," held not invalid or beyond the power of the city to enact.

2. HIGHWAYS—*when exclusion of ordinance governing use of sidewalks, etc., by pedestrians erroneous in action for injury by automobile to pedestrian using street in violation thereof.* Where in an action for personal injuries by automobile there was evidence that plaintiff, when injured, was walking in the roadway of a street contrary to an ordinance, it was prejudicial error to refuse to permit defendant to introduce such ordinance in evidence, the refusal being based upon the erroneous conclusion of the trial court that the ordinance was invalid.

Appeal by defendant from the Circuit Court of Will county; the Hon. FREDERICK A. HILL, Judge, presiding. Heard in this court at the April term, 1925. Reversed and remanded. Opinion filed August 19, 1926.

PENCE B. ORR and FRANK G. BRUMUND, for appellant.

FAULKNER & FAULKNER, for appellee.

PER CURIAM. Appellee, Julia Benison, obtained a judgment for $1,350 in the circuit court of Will county against appellant, John Dembinsky, for personal injuries sustained by reason of her being struck by an automobile driven by appellant, and an appeal has been prosecuted to this court.

The evidence shows that appellee, a woman 60 years of age, was employed as a janitress by the Joliet National Bank, and worked from five o'clock to ten o'clock in the evening. On November 15, 1921, after completing her work, she started home. It had been snowing, sleeting and raining during the evening. She walked south on the west side of South Ottawa street from the courthouse until she reached a point near the

Sacred Heart Church, which is about one and one-half blocks north of McDonough street, which is an east and west street crossing South Ottawa street. The sidewalk at this point was partly cement and partly rock, and water, ice and slush had accumulated on it. She testified that her feet were getting wet, and in order to avoid the bad sidewalk she went into the street which had a smooth asphalt pavement. She walked south about one and one-half blocks, and according to her testimony she was about one foot east of the west curb. An automobile, towing another automobile, came from the west on McDonough street, turned north into Ottawa street, on the east side of the street. Appellant, a life insurance agent, was going south on Ottawa street in an automobile at about eight to ten miles per hour. His wind shield was open so he could see more clearly. As the automobiles approached each other, appellant dimmed his lights; he testified that the automobile going north did not dim his lights, and the spot light blinded appellant so he could not see. About the time the two cars were opposite each other, appellant saw appellee about six or eight feet ahead. He testified he applied his brakes, did everything possible to avoid striking appellee, but his car struck appellee and threw her to the pavement. She was taken to her home in appellant's car, a physician was called, and his services were paid for by appellant. Appellee was treated by this physician about ten times, and then another doctor was called who attended her during the remainder of the time. She was confined to her bed approximately three months, and she testified that she had continued to suffer ever since. There is evidence tending to show that she will never be normal, and will never be able to follow her usual work as a janitress. The declaration charged general negligence, and the general issue was filed.

As a matter of defense appellant sought to introduce in evidence a traffic ordinance of the city of Joliet.

The ordinance was quite lengthy and contained numerous provisions which were in no way related to the matters in controversy. It was offered in its entirety, but counsel for appellant expressly stated that he particularly offered section 1 of article 2 and section 7 of article 4. Counsel for appellee made only a general objection to the offer. Thereupon the court remarked: "I am going to refuse the admission of Sec. 1 of Article 2 for several reasons: First, your offer was the whole ordinance and there is a lot of it that is incompetent and immaterial, but Sec. 1 of Article 2, I am going to refuse admission particularly because, in my judgment, it is unconstitutional and invalid, unreasonable and beyond the power of any city to adopt." It will therefore be seen that the court denied admission of the whole ordinance on the ground that much of it was immaterial and particularly because he deemed section 1 of article 2 unconstitutional. The definite language of the court in reference to section 1 of article 2 cannot be construed otherwise than a holding that said section would not be admitted either separately or with the rest of the ordinance and that it would be futile to offer it either way.

The section referred to provides that "pedestrians shall keep to the right upon all sidewalks, cross walks, roadways and passageways and shall keep off of roadways, except when crossing at street intersections or getting in and out of street cars or vehicles. Pedestrians shall cross roadways at right angles (never diagonally) and on the cross walks. Pedestrians shall observe traffic regulations before stepping from curb and shall watch for traffic-officer's signal and heed traffic-signs and limitlines." Provisions of the character of those contained in this section are to be found in the traffic ordinances and regulations of almost every municipality and are intended to prohibit what is commonly termed "jaywalking." The constitutionality of such ordinances is not an open

question in this State, or in any other jurisdiction so far as we are able to ascertain. The courts of this State have repeatedly determined the validity of enactments which limit pedestrians in the use of the streets, except at intersections, or in going to and from vehicles. When the right of a municipality to impose such restrictions was first presented to the Supreme Court, it might properly have been said that a constitutional question was involved, but when the right has been once declared by the Supreme Court, the question is settled and is not thereafter debatable in that or any other court. And unless special reasons appear for its further consideration, such question will be deemed to be no longer open for review in the Supreme Court. (*Griveau v. South Chicago City Ry. Co.*, 213 Ill. 633; *Burns v. Illinois Cent. R. Co.*, 258 Ill. 302; *Iles v. Heidenreich*, 271 Ill. 486; *People v. Grady*, 217 Ill. App. 490, 492.) Neither the assertion of counsel nor the holding of a trial court that a constitutional question is involved will deprive the Appellate Court of jurisdiction and give it to the Supreme Court, if the Supreme Court has already determined the question in favor of its constitutionality. (*St. Louis Transfer Co. v. Canty*, 103 Ill. 423; *Rowell v. Covenant Mut. Life Ass'n.*, 176 Ill. 557, *Skakel v. People*, 188 Ill. 291.)

In these days of automobile travel, the necessity for municipalities to control and regulate streets for the protection of both pedestrians and travelers in motor vehicles is universally recognized by the courts and legislative bodies. The Supreme Court of this State has declared that city councils have ample power to designate portions of the street to be used by horsemen and vehicles and other portions to be used by pedestrians. (*Topliff v. City of Chicago*, 196 Ill. 215, and cases cited; *Elie v. Adams Exp. Co.*, 300 Ill. 340.) In *City of Fairbury v. Barnes*, 228 Ill. App. 389, the city of Fairbury installed a lighting system for one of its principal streets by placing in the center line there-

of a number of lamp-posts. It adopted traffic regulations requiring vehicles to keep to the right of such posts in going in either direction. Barnes violated the ordinance and in making a turn destroyed one of the ornamental posts. The city brought suit against him for damages and recovered a judgment before a justice of the peace. An appeal was taken to the circuit court where judgment was rendered in favor of Barnes. The city then appealed to this court. Barnes contended that the city was without power to maintain the posts in the street; that they constituted obstruction to travel; that the regulation was invalid, and therefore he was guilty of no violation. In passing upon an instruction given in the circuit court on behalf of Barnes, we said on page 394: ''This instruction is in effect a challenge of the right and the authority of appellant to install the lighting system in the streets of the city. * * * The post, * * * placed at the intersection of Maple and Third streets served a dual purpose, that of dividing the street for traffic purposes and regulations, and for street lighting. It was not the province of the jury, under the evidence, to determine whether or not the post in question was an obstruction in the street. The appellant had the right and power to locate and maintain posts in the streets, when the same were to be used for the purposes for which this post was installed.''

3 McQuillin on Municipal Corporations, sec. 924, expresses the rule as follows: ''In general the local corporation has discretionary power to establish and open streets and public ways, fix their width, determine how much of that width shall be devoted to a carriage way and how much to a foot way or sidewalk, direct the planting of trees within the limits of streets and public grounds, decide where and how hitching posts shall be set, telegraph, telephone and electric wires and poles erected, and, finally, to make all necessary and desir-

able regulations which are reasonable and manifestly in the interest of public safety and conveniences.''

It needs no extended citation of authorities to show that it is necessary for the protection of the public for municipalities to designate what portion of a street may be used by pedestrians and what portion may be used by vehicles. The necessity for such legislation has manifested itself in an Act of the General Assembly of this State with respect to the use of the so-called hard roads by pedestrians. Section 16¾ of An Act to add section 16¾ to ''An Act in relation to State highways'' approved June 1, 1925 [Cahill's St. 121, ¶ 214(2)], makes it the duty of any person walking along and upon durable hard-surfaced State highways to keep on the left of the paved portion, and when meeting a vehicle to step off of said paved portion to the left.

Under the decisions of the Supreme Court of this State, section 1 of article 2 of said ordinance was not invalid, unconstitutional, or beyond the power of the city to enact. Its provisions were vital to the defense of the appellant, and his case was prejudiced by the action of the court in not admitting that section. For this reason the cause should be submitted for another trial.

The judgment of the trial court is therefore reversed and the cause remanded for another trial.

*Reversed and remanded.*