21 N.J. Super. 569 (1952)
91 A.2d 580
GRACE JOHNSON AND ERNEST JOHNSON, PLAINTIFFS-APPELLANTS,
v.
BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF MONMOUTH, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 15, 1952.
Decided October 14, 1952.
*570 Before Judges McGEEHAN, BIGELOW and SMALLEY.
Mr. Howard K. Stokes argued the cause for the appellants (Messrs. Wise & Wise, attorneys).
Mr. Lawrence A. Carton argued the cause for the respondent (Messrs. Roberts, Pillsbury, Carton & Sorenson, attorneys; Mr. Richard O. Venino, on the brief).
The opinion of the court was delivered by SMALLEY, J.S.C.
This is an appeal from the granting of a motion to dismiss made by the defendant-respondent at *571 the close of plaintiffs-appellants' case wherein the defendant moved to dismiss on the grounds that they had failed to prove a cause of action against the defendant. The motion was granted by the trial judge and the plaintiff appeals.
Grace Johnson seeks damages for personal injuries resulting from a fall on a sidewalk located on the southeast corner of Broad and Wallace Streets in the Borough of Red Bank. Her husband sues per quod.
Suit was filed against the Borough of Red Bank, a municipal corporation, and the Board of Chosen Freeholders of the County of Monmouth claiming improper repairs to a defective sidewalk and the resulting creation of a nuisance. The plaintiff testified that on June 17, 1950, she crossed Wallace Street and stepped up on the curb of the southeast corner of Broad Street, that she took two steps when her left heel caught in the sidewalk causing her to fall. She further testified that after she fell she then found that her foot caught in a defectively patched portion of the sidewalk. The action against the Borough of Red Bank was voluntarily dismissed prior to the actual trial of the cause.
At the trial, plaintiffs produced an expert witness, a general contractor, who testified that the repairs in question were not in accordance to accepted standard practice in that the damaged portion was filled with tarvia instead of concrete. He further testified that the patch work was not made flush with the sidewalk and resulted in a hazard.
The plaintiffs produced a member of the police force of the Borough of Red Bank who testified that about two years prior to trial he observed a county truck in the vicinity of the sidewalk in question. The county employees were then patching the street or road adjacent to the sidewalk. He testified that he saw a county employee on the sidewalk patting with a shovel the same sort of material that was being used to repair the road. On cross examination he admitted that he did not actually see the county employee take any material from the truck and place it on the sidewalk; he merely saw the county employee "patting down with a shovel."
*572 There was admitted into evidence certain pages of the minutes of the Board of Chosen Freeholders of the County of Monmouth which contained a resolution, providing, in effect, for the acquisition and maintenance of Broad Street as a county road, pursuant to a certain map which was supposed to be attached thereto but was inexplicably missing. It is to be noted that the minutes, numbered pages 91 to 94 inclusive, record the proceedings of the board of freeholders from January 1, 1912 to April 24, 1912. All that we have before us is a reference to page 93 of the minutes wherein it refers "That Broad Street in the Borough of Red Bank is to be taken over pursuant to a certain map hereby annexed or on hereto annexed to this resolution." The clerk of the defendant board of chosen freeholders testified that there was no record of this map and that a search had failed to produce it. Such other testimony as adduced is not essential to the disposition of this appeal. Plaintiffs rested and the defendant moved for a judgment of dismissal which the trial judge then granted.
It is fundamental that in a motion to dismiss at the close of plaintiff's case, the plaintiff is to have the benefit of all facts proven, together with all direct or indirect inferences which may be reasonably or logically drawn from such facts. Giuliana v. Ginnelly, 6 N.J. Super. 76 (App. Div. 1949); Pirozzi v. Acme Holding Company of Paterson, 5 N.J. 178 (1950).
The law is well settled in New Jersey that a municipality, while in the execution of a governmental function, is accountable in tort only for its own positive acts of misfeasance, and not for mere acts of nonfeasance. Allas v. Rumson, 115 N.J.L. 593 (E. & A. 1935); Milstrey v. Hackensack, 6 N.J. 400 (1951). The doctrine of respondeat superior is also limited in such cases, and the municipality will only be liable for the acts of its officers and employees when such act is performed by the direction or with the participation of the municipality. Allas v. Rumson, supra; Florio *573 v. Jersey City, 101 N.J.L. 535 (E. & A. 1925); Olesiewicz v. Camden, 100 N.J.L. 336 (E. & A. 1924).
Consequently, in order for the plaintiff in the case sub judice to hurdle the obstacle of establishing a prima facie case, she must carry the burden of establishing that it was an employee of the defendant county who placed the tarvia in the depression in the sidewalk, and that such act was done by the direction or with the participation of the defendant county.
We feel that even though we accept all the proofs offered by the plaintiff as true and grant her all the reasonable and logical inferences which can be drawn therefrom, there has not been established a prima facie case which can be submitted to a jury.
We have no difficulty in assuming that the patching of the sidewalk in question was the act of a county employee. Such an assumption may logically and reasonably be inferred from the testimony of the policeman Glover, who stated that he saw a county truck adjacent to the impact area and a workman patting down a substance which later was found to be the same bituminous mixture as was used in repairing the street.
We do find difficulty, however, in drawing any sort of inference, directly or indirectly, that the county employee performed such act by the direction of or with the participation of the defendant county.
This difficulty arises because of the absence of any proof on the part of the plaintiff concerning the authority of the defendant, either mandatory or permissive, to repair or maintain sidewalks. Had she been able to prove that the county had the duty of repair and maintenance which devolves upon it by law, or some incidental or permissive authority to make such repairs, it could be inferred that the act complained of was executed by county direction or participation.
The defendant board of freeholders on February 16, 1912 adopted a resolution stating "That Broad Street in the Borough of Red Bank is to be taken over pursuant to a certain *574 map hereby annexed or on hereto annexed to this resolution." If this quotation is accurate it would appear to be only a part of a resolution. The resolution is not printed in the appendix, although its importance is apparent.
The resolution was adopted probably in exercise of the power granted by L. 1910, p. 202, § 1; 4 C.S. 4570, § 400, which authorized the freeholders to acquire any road lying within the corporate limits of any town, borough, township or village in the county. The statute directed that the resolution of the board of freeholders should designate the road sought to be acquired, name the municipality within which it extends, and should attach to the resolution a map showing the road, and does not empower nor authorize the board of freeholders to construct, grade, curb, pave or repair the sidewalks and curbs along any road that the county has by resolution taken over from the municipality. Rather, it reserves to the municipality the maintenance and repair of sidewalks. "* * * nothing herein shall divest the municipal authorities of any township, town, borough * * * of their authority to light such road or roads, or of their power to construct, grade, curb, pave or repair the sidewalks and curbs along said roads * * *." (L. 1910, p. 203; C.S. 4571, § 404)
R.S. 27:16-1 (source, L. 1918 c. 185, as amended by L. 1924, c. 110, L. 1929, c. 143), authorizing boards of freeholders to acquire roads, highways and portions thereof and to acquire, alter, improve, repair and maintain roads or highways under its control, is also silent as to its duties to sidewalks.
R.S. 27:16-8 (source, L. 1918, c. 185) is as follows:
"The board of chosen freeholders shall maintain every road laid out, opened, taken over, or acquired by it, between the curb lines, and keep it in repair, safe and convenient for travel during all seasons of the year."
R.S. 27:16-22 (source, L. 1928, c. 161, supplement to L. 1918, c. 185) provides that boards of chosen freeholders in *575 counties of first, second, third and fifth classes may construct sidewalks and curbing along county highways and other roads or highways subject to the jurisdiction of the board, and in connection therewith may enter into agreements with municipalities in the county to share part of the cost of construction and thereafter of the maintenance and reconstruction of such sidewalks.
The briefs of the parties are silent as to pertinent statutory authority, though counsel did, in oral argument, make reference to certain legislation. However, we are unable to find that at the time the defendant board of freeholders passed the resolution in question, it did then have the authority under the statutes to take over the responsibility and maintenance of sidewalks; nor did plaintiff submit that any resolutions subsequent to 1912 were ever passed by the Board of Freeholders of Monmouth County, whereby they took over the sidewalk in question in whole or in part with the Borough of Red Bank in accordance with the statutes passed subsequent to the resolution of 1912.
In the absence of any further proof by the plaintiff that the county had affirmatively taken over the sidewalk and the consequent authority and obligation to repair it, we cannot logically infer such responsibility or control.
If there is any doubt as to the proof of the responsibility of the defendant or any inference to be drawn therefrom, such doubt is palpably resolved by the plaintiff who admits in her brief that "there is no proof that the County was not responsible for the sidewalk, nor was there proof that the County was responsible. Testimony as to that phase of the case might have developed later in the case."
Consequently, it is evident that under the facts as proved by the plaintiff, the proposition that the act complained of was accomplished by the direction or with the participation of the county cannot be logically and reasonably inferred.
Taking all of the facts as proven by the plaintiff as true, and giving her the benefit of all legitimate inferences to be drawn therefrom, we feel that she did not establish a prima *576 facie case, and accordingly we sustain the action of the court below.
Affirmed.
BIGELOW, J.A.D. (concurring).
I agree that the judgment should be affirmed but I reach the result by a somewhat different route than that taken by my colleagues.
The board of freeholders, early in 1912, adopted a resolution "that the County of Monmouth acquire the following roads extending through the corporate limits of the Boro of Red Bank, shown upon the map hereunto annexed, as county roads, to be governed by the same rules governing other county roads, as follows: * * * Also, all that street known as Broad Street, beginning at the junction of Front and Broad Streets, thence southwardly to Red Bank Boro limits. This resolution is adopted pursuant to Chapter 121 of the Laws of 1910 (p. 202)." The resolution became an exhibit in the cause, although it is not printed in the appendix.
The statute mentioned, L. 1910, c. 121; 4 C.S. 4570, § 400 et seq., authorized the freeholders to acquire any road lying within the corporate limits of any town, borough, township or village in the county. It seems to me clear that the county took over Broad Street for its entire width as a county road. A sidewalk is just as much a part of the highway as is the area between the curbs. Dickinson v. Worcester, 138 Mass. 555, 562 (Sup. Jud. Ct. 1885); Topliff v. Chicago, 196 Ill. 215, 63 N.E. 692 (Sup. Ct. Ill. 1902); City of Frankfort v. Coleman, 19 Ind. App. 368, 49 N.E. 474 (Ind. App. Ct. 1898); In re Burmeister, 76 N.Y. 174 (Ct. App. 1879); Allegheny County Light Co. v. Booth, 216 Pa. 564, 66 A. 72, 74 (Pa. Sup. Ct. 1907).
The act of 1910 was repealed in 1918 and so did not control maintenance work in 1949 or 1950. R.S. 27:14-21 puts upon the county the duty of keeping in repair roads accepted by the freeholders under the act of 1910. R.S. 27:16-1(d) empowers the board of freeholders to "* * * *577 repair and maintain any road or highway under its control, either in whole or in part." Compare "An act concerning counties," L. 1918, c. 185, § 1117, now found in R.S. 27:16-6, which likewise puts upon the freeholders the duty of keeping in repair any road taken over as a county road, but adds: "nothing herein contained shall divest any municipality * * * or its power to construct, grade, curb, pave or repair the sidewalks and curbs along it, [such road] * * *." R.S. 27:16-8 puts a positive duty on the freeholders to maintain and keep in repair every road acquired by it "between the curb lines."
I can feel little assurance that in the jungle of our statutes relating to roads and to counties, I have found all that bear upon the present controversy. It seems likely, however, that in 1949 or 1950, when the police officer saw a county employee patching the sidewalk, the county was under no positive duty to keep the sidewalk in repair, although it had, I suggest, a discretionary power to do so. But it is a power seldom exercised, for sidewalk repairs are generally made by the abutting owners, either for their own convenience or under pressure of government action. See R.S. 40:65-1 to 13 for municipal action toward securing the repairs of sidewalks at the expense of the owner.
It is against this background that we must judge what inferences a jury could properly draw from the testimony of the police officer. He saw on Broad Street a county truck containing a black material used to repair pavements. There were three or four county employees with the truck, repairing the roadway. One of the employees took some of the material and patched the hole in the sidewalk. Such is the purport of the policeman's testimony. The man who patched the sidewalk was either acting within the scope of his employment, or he chanced to see the hole in the sidewalk and, on his own responsibility, tried to fix it.
Professor Wigmore, in his discussion of circumstantial evidence, says that sometimes courts "require in effect that the alleged conclusion (to which the evidentiary fact is directed) *578 must be a more probable one than others; sometimes they merely require that it must be a probable or a possible one, irrespective of the greater probability of others." Wigmore, Evidence, § 32. Our own courts have blurred the distinction between the two tests. "The only requirement is that the claimed conclusion from the offered fact must be a probable or more probable hypothesis, with reference to the possibility of other hypotheses." Jochim v. Montrose Chem. Co., 3 N.J. 5 (1949). But negatively, it has been held that the particular conclusion "should not be inferred from circumstances which may be explained with equal reasonableness on a contrary hypothesis." Buchman v. Smith, 140 N.J. Eq. 390 (E. & A. 1947). The crucial question is whether fair-minded men, after full consideration of the evidence, may differ in this respect: Will some say that a certain conclusion from the circumstances is more likely than any other; and others say that either of two conclusions is equally probable? In such event, there is a question for the jury. But if fair-minded men would agree that the circumstances proved point to neither suggested conclusion more strongly than to the other, the court may direct a verdict for defendant on the ground that the evidence is insufficient to support a verdict for the plaintiff.
In the present case, the circumstances in my opinion were insufficient to justify an inference that the workman was acting within the scope of his employment. Such an inference would be a mere guess. I therefore consider that the plaintiff did not sustain the burden of proof and that the court properly directed a verdict in favor of the defendant.